THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY M. WILLINGHAM, Defendant-Appellant.

Third District    No. 80-82

Opinion filed February 6, 1981.

Verlin R. F. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

John R. Barra, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Gary M. Willingham, was indicted for two counts of murder and one count of attempt (attempt robbery). After an extensive hearing on his motion to suppress, the circuit court of Peoria County denied the motion and proceeded to the first trial of this cause and a declaration of a mistrial. At his second trial, defendant was acquitted of both counts of murder but convicted of one count of attempt (armed robbery) and sentenced to a determinate term of 15 years in the Department of Corrections.

On appeal, defendant advances three assignments of error, contending (1) that his confession was not corroborated by sufficient independent proof of the *corpus delicti*; (2) that his statements and evidence derived therefrom were fruits of an illegal detention; and (3) that his sentence is excessive as it reflects the trial court's opinion that he was guilty of murder and ignores the factors in mitigation. We shall recite the rather extensive facts of this cause in conjunction with our discussion of the first of these contentions.

■■ Before reaching defendant's first assignment of error, we must consider the State's argument that this issue has been waived for want of inclusion in defendant's motion for new trial. While the failure of a defendant to make an appropriate motion in the trial court waives the issue for review (*e.g., People v. Cimino* (1970), 45 Ill. 2d 556, 257 N.E.2d 97, *cert. denied* (1971), 402 U.S. 932, 28 L. Ed. 2d 867, 91 S. Ct. 1530), Supreme Court Rule 615(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) provides a limited exception to the waiver rule. We may take notice of errors appearing upon the record which deprive an accused of substantial means of enjoying a fair and impartial trial (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239) or in criminal cases in which the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856).

As we find a lack of sufficient corroboration would deprive an accused of substantial means of enjoying a fair and impartial trial, we shall notice defendant's assignment of error.

■■ It is well established in Illinois that a confession without corroborating evidence is insufficient to support a conviction (*People v. Holmes* (1977), 67 Ill. 2d 236, 367 N.E.2d 663; *People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 256; *People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258); however, the *corpus delicti* is not required to be proved beyond a reasonable doubt exclusively by evidence *aliunde* the confession or admissions of a defendant (*People v. Perfecto*; *People v. Melquist* (1962), 26 Ill. 2d 22, 185 N.E.2d 825, *cert. denied* (1963), 372 U.S. 967, 10 L. Ed. 2d 130, 83 S. Ct. 1093; *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319). If there is corroborating evidence which tends to confirm the circumstances related in the confession, both may be considered in determining whether the *corpus delicti* is sufficiently proved. (*People v. Perfecto*; *People v. Melquist*; *People v. O'Neil*.) From the cases the test is whether the evidence *aliunde* corroborates the confession or tends to show that a crime did occur. We now consider the independent and other evidence presented in the trial court.

In the late evening of June 4, 1979, William Lininger saw a brown Firebird or Camaro drive into the parking lot of the Green Briar Apartments where he and the victim resided. Lininger went outside and met a man to whom he spoke, but did not recognize, walking from the general area of the automobile into the apartment building. He thereafter saw two men, one of whom might have been the same man seen earlier, exit the building, look up at some windows, and re-enter the building. A short time later, Lininger heard a "pop sound" and saw two men, whom he could not recognize, come out of the building and begin to run. A few minutes later, a van pulled into the parking lot. A young man left the van and entered the building but came out very quickly, yelling that the victim, Gregory Sargent, had been hurt. Lininger then went inside, saw the victim, and called the police.

Officers Jack Hill and Gary Siebenthal responded to the call. Hill found a .32-caliber casing near Sargent and a safety mechanism in the same area. After speaking to Lininger, he searched the automobile, finding nothing of substance, but identifying its owner as Mary Jamison. Officer Michael Scally also arrived at the scene and was told by the victim that he had opened the door to his apartment and was shot by two men wearing nylon stockings over their heads. The officers found no prints of defendant at the scene but did discover various drugs. The automobile was neither impounded nor placed under surveillance.

Mary Jamison lived with defendant at the time of the homicide and told police that he had left their apartment with Glenn Patton at

approximately 8 p.m. on the evening in question. She acknowledged that she had loaned him her automobile, in which she discovered a nylon stocking when the gold Camaro was returned the next day. A subsequent consent search of the vehicle revealed both the stocking and a pair of pants with blood on their right pocket. She also said that defendant owned a .25-caliber handgun.

After speaking with Jamison, the police effected a warrantless arrest of defendant, who, after being given his *Miranda* warning, agreed to speak to the officers. After first denying any involvement, defendant stated he was visiting the victim when Sargent answered his door and a "bump" and shot followed, whereupon he panicked and ran to the home of Tracy Lorenz. While there, he told a friend, Betty Balestri, what had happened. After first denying any knowledge of the incident, Balestri confirmed this story and added that defendant had also spoken to Patton and Lorenz about the shooting.

Defendant's interrogation continued and on June 10, 1979, he offered the confession he now contends is insufficiently corroborated. He stated that the victim had angered him by making sexual advances toward Balestri, in consequence of which Patton, David Thomas, and he planned to rob Sargent of cocaine. Defendant was to knock on the door and when the victim opened it, defendant would be knocked down by his companions, who would then rob the victim using an unloaded gun. Defendant also stated he had disposed of the gun, which was ultimately discovered with his assistance, and which was in a nylon stocking.

At defendant's second trial, he stated that, being tired and feeling he would not otherwise be left alone, he parroted one of three theories advanced by Investigator Charles Cannon. His trial testimony was consistent with his initial version of the incident, considering he earlier attempted to avoid incriminating Patton. He stated that he had grown up with the victim and that they were friends. When Balestri complained of Sargent's unwelcome advances, defendant thought he could solve the problem by speaking to him the evening of the homicide. Before leaving that evening, defendant was visited by Patton, who told defendant that Thomas and he were going to steal drugs from the victim in retaliation for the advances toward Balestri. Defendant and the two men then left the apartment and drove to Lorenz' home in the borrowed Camaro, picking up Thomas along the way. When the two passengers discussed the contemplated robbery, defendant repeated his unwillingness to participate in the scheme and left the two for the evening. He then went to see Sargent, passing Lininger on the way, and was discussing the Balestri situation in the victim's living room when the homicide occurred as related in his original statement. He added that he saw Patton and

Thomas in the parking lot and the three of them left in Patton's car. Patton said that Thomas had shot Sargent and pressured defendant to accede to Thomas' request to dispose of the .32-caliber weapon, which he did. Upon defendant's inquiry, Thomas said the shooting was accidental.

On the basis of these facts, defendant was convicted of attempt (armed robbery). A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1977, ch. 38, par. 8—4(a).) The offense of armed robbery occurs when a person takes property from the person or presence of another by the use of force or by threatening the imminent use of force (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(a)) while carrying on or about his or her person, or being otherwise armed with, a dangerous weapon (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 18—2(a)). We now turn to the independent evidence in this case to determine whether the attempt conviction was sufficiently corroborated.

Certain facts are clearly established by the evidence *aliunde* the confession. Jamison's automobile was present in the Green Briar lot, and an unidentified man walked from the area where the vehicle was parked, past Lininger, into the building where the victim lived. Two men then exited and re-entered the building, after which the homicide occurred and two unidentified men came out of the building and began to run. Before lapsing into a coma, Sargent told police that he opened his door and was shot by two men wearing nylon stockings over their heads. The fatal shot was fired from a .32-caliber weapon, which was recovered with defendant's assistance, and a nylon stocking and a pair of bloodstained pants were found in Jamison's automobile.

■■ To support the conviction at bar, the above facts must corroborate the confession or tend to show an act constituting a substantial step toward taking property, by force or threat thereof, from Sargent while armed with a dangerous weapon. We must consider that the victim spoke of being shot by two men, rather than three, and that he neither said nor implied anything about a robbery. No demand for property was overheard by any witness, and the police found no evidence of any ransacking or rearrangement of Sargent's apartment. No evidence of anyone as much as entering the apartment was presented to the trial court and the victim was not shown to have held or carried any property, as if in response to a prior demand. Defendant was not shown to be armed, and his fingerprints were not found at the scene of the homicide. Viewing the totality of the evidence *aliunde*, we find that it tends to establish defendant's presence near the scene of the homicide, as well as the occurrence of a homicide; however, we find no independent evidence of the occurrence of an attempt (armed robbery) nor corroboration of defendant's confes-

sion to that crime. As the *corpus delicti* has thus not been sufficiently established, the conviction for attempt (armed robbery) cannot stand. We therefore do not reach defendant's additional assignments of error.

Accordingly, the judgment of the circuit court of Peoria County is reversed.

Reversed.

ALLOY, P. J., and SCOTT, J., concur.