THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DERRICK CLARK, Defendant-Appellant.

First District (1st Division) No. 85—0420

Opinion filed August 31, 1987.

Steven Clark, of State Appellate Defender's Office, and Winston & Strawn, both of Chicago (Thomas M. Lynch and Maureen A. McNamara, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Christopher J. Cummings, and Sally J. Bray, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant, Derrick Clark, was convicted of armed robbery. (Ill. Rev. Stat. 1983, ch. 38, par. 18—2.) He was sentenced to 25 years in prison. He appeals his conviction and sentence.

John Obaseki, the victim of the armed robbery, testified that on September 3, 1984, just before midnight, he was a passenger in a parked taxicab in front of 5240 North Kenmore in Chicago. He was waiting for the taxicab driver, who had entered an apartment at that address.

At this time, he observed two men approach the taxicab. One man was tall and thin with a fair complexion, and was later identified as the defendant Derrick Clark. The other man had a darker complexion with a stocky build, and was later identified as Montery Willis (Willis). Defendant told Obaseki to take them to Broadway and Sheridan. He declined, telling him he was not the driver and the cab was not for hire. At this point defendant pulled out a gun and climbed into the driver's seat. Willis entered the rear of the taxicab. Defendant handed the gun to Willis and the three drove away.

During the following 20-minute drive, defendant relieved Obaseki of his wallet and jacket. Willis constantly pointed a gun at Obaseki and the two threatened to kill him. As they drove down Sheridan Road, Obaseki noticed a police squad car. He called for help and grabbed the gun from Willis; a struggle ensued between Willis and Obaseki. As defendant turned around to strike Obaseki, the taxicab collided with a CTA bus.

Willis then pushed Obaseki out of the cab, breaking his leg. The two assailants fled the scene pursued by the police. The police quickly apprehended the two men whom Obaseki identified as the men who had robbed him. The two men were arrested. Defendant later gave a statement to an assistant State's Attorney in which he implicated himself in the robbery of Obaseki.

# I

Initially, defendant argues that the victim's identification was the result of suggestive police procedures denying him a fair trial. The police presented defendant while the victim was lying on the ground, injured and dazed. He was presented alone, in handcuffs surrounded by many police officers. This procedure is often called a "showup"

identification which has been "observed to carry with it a dangerous degree of improper suggestion." *People v. Blumenshine* (1969), 42 Ill. 2d 508, 512, 250 N.E.2d 152, 154.

██ We note at the outset that defendant has waived review of this issue, because he failed to object to the admission of the identification evidence at trial. (*People v. Lucas* (1981), 88 Ill. 2d 245, 250, 430 N.E.2d 1091, 1093.) This issue was also not specifically raised in defendant's post-trial motion. Illinois law requires that both steps be taken in order to preserve an issue for review. *People v. Surles* (1984), 126 Ill. App. 3d 216, 226, 466 N.E.2d 1295, 1301.

██ █ Assuming, *arguendo*, the defendant had not waived this issue on appeal, the record shows the identification was reliable. The United States Supreme Court has set forth five factors to evaluate the reliability of the identification. These factors are as follows: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114-15, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.

First, Obaseki had ample opportunity to observe defendant at close range. They were face-to-face in the taxicab when defendant removed his jacket and took his wallet. Furthermore, he observed defendant's face in the rearview mirror during the 20-minute drive. Moreover, as defendant and the other man approached the taxicab, Obaseki was able to observe the defendant's features.

Second, the record supports the inference that he identified the defendant without any hesitation. The record reveals that Obaseki testified as follows:

"Q. And when the policeman came up to you with the defendant with his hands behind his back, did the policeman say anything to you?

A. Yes, sir.

Q. What did he say?

A. He asked me—I mean if that was the armed robber and I said yes, and then he give me a gun, you know. I said yes, that was the gun which they had."

The testimony of Officer Joseph Laskero, the police officer on the scene, corroborated the victim's account of the showup identification.

A further indicator of the reliability of the identification was the fact that it took place within two to three minutes of the offense. The victim had a fresh recollection of his assailants at the time of

the identification.

Alternatively, the police were justified in using a showup identification. At the time of the identification, the extent of the victim's injuries was unknown. If the police had not questioned the victim at the scene, he may have died shortly after defendant's arrest without making an identification.

The defendant argues, however, that the identification was not reliable because the victim did not give a prearrest description of defendant. This argument misses the mark. The victim did not give a prearrest description because it took place so soon after the offense. Under these circumstances, the lack of a prearrest description does not cast a doubt on the reliability of the identification.

In sum, the *Manson* factors weigh heavily in favor of the reliability of the identification. In this case, use of a showup identification does not mandate reversal.

## II

Defendant next argues that he was not proven guilty beyond a reasonable doubt because the victim's identification was faulty, and the physical evidence contradicted the victim's account of the robbery. As was discussed earlier, the victim had ample opportunity to observe defendant. He observed defendant as he approached the cab and asked to hire the cab. He further observed defendant at close range in the cab when he robbed him and in the rearview mirror when he drove the victim around. These observations lend credibility to the victim's identification at the scene and at trial.

In addition, defendant claims that the physical evidence contradicts the victim's account of the robbery. The victim testified that he was robbed by two men. He testified that the defendant handed a black gun to the shorter man in the backseat. The shorter man pointed the gun at him during the ride in the taxicab. Obaseki testified that the black gun was the only one he observed during the robbery.

However, at the time of his arrest, the defendant was carrying a chrome-plated gun. Defendant argues that since the victim did not observe the chrome-plated revolver, defendant could not be one of the assailants. The fact that defendant had a second gun merely demonstrates that the victim was unable to see it. This discrepancy does not impeach the victim's credibility in any material respect, nor does it show that defendant was not one of the robbers.

Finally, defendant argues that his written and oral statements to the police fail to sustain his conviction. This argument is without

merit. In essence defendant's statements indicate that he, along with an accomplice, approached a taxicab, entered the vehicle, drove away, robbed the occupant at gunpoint and subsequently crashed the taxicab into a bus. Any differences between this account and the victim's testimony are immaterial.

In sum, defendant was convicted beyond a reasonable doubt. The victim's testimony was credible based on ample firsthand observations. Moreover, his testimony was not impeached in any material respect. In addition, defendant's oral and written statements weigh heavily in favor of his guilt.

### III

Defendant next contends that he was denied effective assistance of counsel, thereby depriving him of a fair trial. The United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2065-66, stated that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." In order to establish ineffective assistance of counsel, a defendant must meet the following two-tiered test: (1) a defendant must show that counsel committed errors "so serious that [he] was not functioning as the 'counsel' guaranteed *** by the Sixth Amendment," and (2) the errors prejudiced defendant's defense. 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.

Defendant claims that the first tier of *Strickland* is satisfied because his trial counsel did not move to suppress the statements he made to police. In addition, he contends that his trial counsel failed to object to evidence which was inadmissible.

The court has consistently held that the decision by counsel not to move to suppress evidence is one involving trial strategy and therefore outside the scope of review for purposes of establishing incompetency of counsel. (*People v. Borges* (1984), 127 Ill. App. 3d 597, 604, 469 N.E.2d 321, 327.) Moreover, the record does not indicate a conclusive basis to successfully suppress defendant's confession.

Defendant also contends that his trial counsel's failure to object to evidence at trial constitutes ineffective assistance of counsel. Incompetence of counsel is not established by a failure to object to evidence, even if the evidence is inadmissible. (*People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677, 686.) The decision of when to object to evidence is purely a matter of trial strategy. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 69, 419 N.E.2d 1181, 1188.) Appellate review of a defendant's representation does not extend to

matters involving trial tactics. (*People v. Phillips* (1982), 110 Ill. App. 3d 1092, 1104, 443 N.E.2d 655, 663.) A defendant is entitled to competent, not perfect or successful, representation, and mistakes in strategy will not render a defendant's representation incompetent absent a showing of substantial prejudice. *People v. Lerch* (1985), 134 Ill. App. 3d 643, 656, 480 N.E.2d 1253, 1263.

We have reviewed the record in the instant case and find defendant did not suffer substantial prejudice when his trial counsel failed to object to the admission of certain evidence. Assuming all the evidence in question had been excluded, it would not have had a material effect on defendant's conviction. The record overwhelmingly points to defendant's guilt; minor evidentiary errors would not have altered this conclusion. Since no substantial prejudice resulted, it cannot be said that the trial strategy of defendant's attorney denied him effective assistance of counsel or a fair trial.

### IV

■ Defendant next argues that evidence concerning the victim's injuries at the time of the robbery and subsequent medical care was irrelevant and unduly prejudiced the jury. He cites *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 454, 185 N.E.2d 209, 210-11, and *People v. Johnson* (1979), 76 Ill. App. 3d 147, 152, 394 N.E.2d 919, 922, in support of his argument. Both of these cases are readily distinguishable. In *Nickolopoulos* and *Johnson*, the State presented gory evidence of bloody bullet wounds. Furthermore, the evidence showed that the victims were paralyzed as a result of the shootings. The court in both cases held that this evidence was irrelevant and so inflammatory as to require a new trial.

In the instant case, on the other hand, the evidence merely showed the victim suffered a broken hip and nose. In addition, it showed he had a metal pin inserted into his leg, and at the time of trial he was using crutches. While this evidence was only remotely relevant, it was not so inflammatory as to require a new trial. In the context of the overwhelming record of defendant's guilt, any error in the admission of this evidence was harmless and does not dictate reversal. *People v. Ishmael* (1984), 126 Ill. App. 3d 320, 328, 466 N.E.2d 1334, 1339-40.

### V

■ It is defendant's position that the State introduced hearsay evidence at trial thereby depriving him of the right to confront his accusers and denying him a fair trial. Officer Joseph Laskero, a Chi-

cago police officer, testified that when he arrested Montery Willis, the other robber, Willis pointed at defendant and declared that he had a gun. In addition, defendant claims that Detective Carl Leidy, a detective with the Chicago police department, testified that Willis indicated to him where the victim's jacket was located. Defendant argues that the testimony of Laskero and Leidy attempted to link defendant to the incident by verbal and nonverbal hearsay statements foreclosing his ability to effectively impeach his accusers.

Hearsay is defined as an out-of-court statement offered to establish the truth of the matter asserted. (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226.) However, where the statement is offered to prove something other than the truth of the matter asserted, it is not hearsay. *People v. Camp* (1984), 128 Ill. App. 3d 223, 230, 470 N.E.2d 540, 545.

The declaration Willis made to Officer Laskero that defendant "has a gun" was not offered to establish the truth of the matter asserted, so it does not constitute hearsay. Rather, it was properly admitted to show why Officer Laskero abandoned Willis and proceeded to chase the defendant down Sheridan Road, where he was eventually apprehended.

Alternatively, defendant contends that Detective Leidy's testimony contained nonverbal hearsay which suggested that Willis told him where the victim's jacket was located. The record does not show Detective Leidy testified that Willis said or did anything to indicate where the jacket was located. His testimony does not contain a verbal or nonverbal out-of-court statement by Willis. A hearsay violation cannot occur without some type of out-of-court statement.

In sum, we conclude that the testimony of Officer Laskero and Detective Leidy did not contain hearsay. Assuming, *arguendo*, their testimony did contain hearsay, its admission would constitute harmless error. There is no reasonable possibility that the verdict would have been different had the testimony in question been excluded. *People v. Griggs* (1982), 104 Ill. App. 3d 527, 531, 432 N.E.2d 1176, 1185.

## VI

The defendant next argues that statements made by the State's Attorney during closing and rebuttal argument unduly prejudiced the jury and denied him a fair trial. According to defendant, the prosecutor unfairly inflamed the passions and prejudices of the jury, impermissibly relied on statements not supported by the evidence, and improperly asserted his personal opinions.

At the outset we note that the defendant has waived review of most of the prosecutor's comments because he did not object at trial, nor did he specify his objections in a motion for a new trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Hairston* (1970), 46 Ill. 2d 348, 367, 263 N.E.2d 840, 851-52.) Assuming, *arguendo*, defendant had objected at trial, the prosecutor's comments were proper because they consisted of reasonable inferences from the evidence or were otherwise within the realm of the prosecutor's broad latitude in closing argument.

■■■ We initially consider defendant's contention that certain comments made by the prosecutor during closing argument inflamed the passions and prejudices of the jury. Our review of the comments in the instant case indicates that the prosecutor merely urged the fearless administration of the law. It is a well-established principle of law that a prosecutor during closing argument may urge the fearless administration of law. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 522, 475 N.E.2d 945, 950; *People v. Hunter* (1984), 124 Ill. App. 3d 516, 534-35, 464 N.E.2d 659, 675; *People v. Jones* (1982), 108 Ill. App. 3d 880, 888, 439 N.E.2d 1011, 1017-18.) Thus, these comments were proper and did not result in any undue prejudice to defendant.

■■■ We next consider defendant's argument that the prosecutor made statements not supported by the evidence in trying to explain contradictions in the victim's testimony. At trial, the victim testified that he was robbed at the intersection of Leland and Winthrop. During cross-examination, an accident report prepared by a representative of the taxicab company was presented. In the report, Obaseki allegedly stated that the robbery occurred at the intersection of Broadway and Foster. During closing argument, the prosecutor explained this discrepancy as follows:

> "It does not make any difference. If you think about it ladies and gentlemen, the man was in the backseat of the cab. There was a man sitting next to him holding a gun at him, he was being threatened at the time, and he was being robbed. The last thing in his thoughts were [*sic*] to look out the window to see which intersection he was at. It makes no difference where the robbery took place. The point is he was robbed. The point is he was part of the robbery."

We believe that it is utterly reasonable for a person held at gun point to make a mistake concerning the intersection where he was robbed. The prosecutor's explanation is supported directly by the evidence and reasonable inferences to be derived from it. Such matters are proper subjects of comment to the jury. *People v. Rodriguez*

(1985), 134 Ill. App. 3d 582, 590, 480 N.E.2d 1147, 1152.

■■ Finally, we consider defendant's contention that the prosecutor sought to sway the jury by invoking the prestigious nature of his office and interjecting his personal opinions. In support of his position, defendant relies on *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256. In *Bitakis*, the court found reversible error in the following statement:

> " 'I submit we learned the evidence as it came to us, and there was not one bit of fabricated evidence that went on this stand. Because the power of the state's attorney, as awesome as it is to indict, is just as it is to say nolle prosse and that is the end of the case of John Bitakis.
>
> If there was one bit of evidence that Thomas Lalagos—and he could be indicted for involuntary manslaughter—was the offender, by God, Thomas Lalogos would be sitting there and not John Bitakis.
>
> Do you think the state's attorney's office—you people yourself are interested in indicting and convicting with the consequences that he faces for the rest of his life, the wrong man [*sic*]?' " (8 Ill. App. 3d 103, 107, 289 N.E.2d 256, 259.)

The court found that this line of argument implied that defendant's indictment was proof of his guilt. Therefore, the court held that the statements were prejudicial and required reversal.

These statements are in sharp contrast to those made in the instant case. Unlike *Bitakis*, the prosecutor never referred to his official title or the powers of his office. He did not seek to sway the jury with his status as an assistant State's Attorney. In addition, he did not suggest that the jury disregard its oath and render a verdict against defendant because he had already determined defendant's guilt.

Instead, the prosecutor pointed to the overwhelming nature of the evidence which indicated defendant's guilt. He urged the jury to consider the evidence and based on it, convict the defendant. Such argument is totally proper. We find no error in the prosecutor's argument.

■■ Alternatively, defendant argues that the prosecutor improperly expressed his personal opinion of the evidence. This argument is without support in the record. The prosecutor made reasonable commentary on the evidence and argued that the victim had no motive to lie. His comments and arguments were based on the evidence and therefore were proper. *People v. Rodriguez* (1985), 134 Ill. App. 3d 582, 590, 480 N.E.2d 1147, 1152.

In sum, the prosecutor's closing and rebuttal arguments were proper. His statements did not cause the defendant any undue prejudice, nor did they deny defendant a fair trial. We do not find any reversible error in the record before us.

## VII .

██ Defendant assigns five errors which he claims have the cumulative effect of denying him a fair trial. We note that most of these errors have been waived because the defendant did not object at trial or specify them in a post-trial motion. (*People v. Baker* (1983), 114 Ill. App. 3d 803, 807, 448 N.E.2d 631, 635.) Assuming, *arguendo*, defendant had preserved the claimed errors on appeal, we find no basis for reversal.

First, defendant claims that the testimony of Officer Laskero and Detective Leidy regarding the victim's pretrial identification contains inadmissible hearsay. It is well established that where a victim had previously testified concerning his statements to police identifying the defendant as his assailant, the police officer's later testimony regarding that identification is not rendered inadmissible by the hearsay rule. *People v. Robinson* (1977), 47 Ill. App. 3d 48, 52, 361 N.E.2d 759, 762.

This case is analogous to *People v. Price* (1979), 76 Ill. App. 3d 613, 394 N.E.2d 1256. In *Price*, a police officer was permitted to testify that certain witnesses had identified the defendant at a pretrial lineup. Over defendant's objections, the court ruled that a police officer's testimony regarding witness' out-of-court identification is admissible, notwithstanding the rule against hearsay, if the declarant is present at trial, testifies to the prior identification and is subject to cross-examination. (76 Ill. App. 3d 613, 629, 394 N.E.2d 1256, 1267.) The court in *Price* admitted the testimony, finding that it met these conditions.

Similarly, in the case at bar, Obaseki had previously given credible testimony that he had identified defendant and Willis as his assailants at a pretrial showup. In addition, Obaseki was present throughout the trial and available for any subsequent cross-examination. The conditions outlined in *Price* have been met in the instant case, and therefore the testimony was properly admitted.

██ Second, defendant contends that the single bullet recovered from the taxicab was improperly admitted into evidence because the State did not show its relevancy to the events in question. The test to determine the admissibility of evidence is whether or not it is relevant. (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295,

297.) Evidence is relevant where there is a sufficient nexus between it, the defendant and the crime. *People v. Jones* (1961), 22 Ill. 2d 592, 599, 177 N.E.2d 112, 116.

The facts of the instant case clearly show the nexus between the bullet, the crime and the defendant. The bullet was retrieved from the scene of the crime almost immediately after the collision. Moreover, Officer Laskero testified that the gun recovered from the defendant lacked a mechanism to prevent bullets from falling out; the gun was missing one bullet. In addition, he testified that the bullet on the floor was identical to the bullets recovered from defendant's gun. These facts establish a link between the bullet and the scene of the crime and place defendant at the scene of the crime. (See *People v. Boyd* (1980), 88 Ill. App. 3d 825, 852, 410 N.E.2d 931, 950-52.) Thus, the bullet was relevant evidence and was properly admitted.

Third, defendant claims that it was error for the trial court to allow Officer Laskero to testify regarding the similarities between the bullet retrieved from the taxicab and the four bullets recovered from defendant's gun. He argues that Officer Laskero was not competent to give expert testimony. This argument misses the mark. Officer Laskero was competent to testify to his observations which were within the realm of common experience. (*People v. Gloster* (1980), 89 Ill. App. 3d 250, 252, 411 N.E.2d 891, 893.) By comparing the bullets, he could discern that they were the same size, shape and color, leading him to conclude that they were identical. These observations did not require expert testimony, and therefore he was competent to testify to the similarities between the bullets.

Fourth, defendant contends that the gun and bullets seized from defendant were irrelevant and should not have been admitted into evidence. As we discussed earlier in reference to the single bullet that was found in the taxicab, the gun and bullets were relevant because they showed a link between defendant and the scene of the crime. This evidence merely complements the State's proof with respect to the single bullet. The State has shown a sufficient nexus to have defendant's gun and bullets admitted.

Fifth, defendant takes the position that the trial court erred in not reading to the jury the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981). Defendant concedes that this part of the instruction is only relevant when the proof of guilt is wholly circumstantial. Since the proof of defendant's guilt is not wholly circumstantial, the trial court properly refused this part of the instruction.

In sum, the trial court properly exercised its discretion in admitting evidence and instructing the jury. We find no error, cumulative or otherwise, which dictates reversal.

## VIII

■■ Finally, we consider defendant's arguments with respect to his sentence. Defendant argues that his sentence is excessive as compared to Montery Willis, who actively participated in the crime and had a similar criminal record. He asserts that he was more severely punished because he chose to exercise his right to a jury trial instead of pleading guilty. Alternatively, defendant claims that the trial court abused its sentencing discretion because it did not give adequate consideration to his rehabilitative potential. Defendant did not raise either of these issues at his sentencing hearing and accordingly they are waived on review. *People v. Hobson* (1983), 117 Ill. App. 3d 191, 204, 452 N.E.2d 771, 780.

■■ Assuming, *arguendo*, these issues had been preserved for review, defendant's sentence was nonetheless proper. First, the record reveals that defendant and Willis did not have similar criminal records, nor does it show they participated in the crime to an equal degree. Defendant's criminal record includes a robbery conviction where he viciously beat up an elderly man. Willis, on the other hand, only had two minor juvenile adjudications. Neither of these adjudications involved a violent crime.

The record clearly shows that defendant directed the events before and during the robbery. He approached the taxicab, drew a gun which he handed to Willis. He ordered Willis to sit in the backseat and to hold the gun on the victim. Based on these facts in the record, it is obvious that it was defendant's criminal background and degree of participation in the crime, not the exercise of his right to a jury trial, that accounted for the difference in the sentences given to Willis and defendant. See *People v. Moon* (1982), 107 Ill. App. 3d 568, 575, 437 N.E.2d 823, 828.

As to the claimed abuse of sentencing discretion, the record does not show that the trial court failed to consider defendant's rehabilitative potential and mitigating factors in arriving at his sentence. Indeed, the trial judge specifically stated that he considered mitigating factors. The trial judge made the following statement before issuing the sentence:

> "Having considered the evidence that I heard during trial, which resulted in a finding of guilty by the jury to the charge of armed robbery, having considered all of the information con-

tained in this presentence investigation, what I've heard in aggravation, what I've heard as the defendant's—the other conviction, the fact that the defendant was on parole at the time a few short months from his release from the penitentiary from that other conviction, that conviction being for robbery, having considered what I've heard in mitigation, the mother's testimony as to her son, the fact that he went to church and her own personal problems that she has, including the loss of her daughter, having considered all these factors I will impose a sentence that I feel is appropriate.

\* \* \*

This is intended just as the appropriate sentence for what I have heard in this court as to this particular incident and as to this particular defendant's background and how this defendant is inclined to violence, is inclined to commit crimes of violence on other people and that's the reason that the sentence is imposed, not as any messages, just that this is the appropriate sentence for the acts that this defendant has committed and his background indicates."

 The record shows that defendant's rehabilitative potential is minimal. He never utilized the job skills he learned when he was in prison for his earlier robbery conviction. Instead, he committed another violent robbery while on parole from this earlier conviction. As the judge noted, in light of these repeated episodes of violent crime, a 25-year sentence was appropriate. We feel the trial judge properly exercised his discretion and his sentencing decision will not be disturbed on appeal.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and MANNING, J., concur.