THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY DAVIS, Defendant-Appellant.

First District (2nd Division)   No. 86—0113

Opinion filed July 26, 1988.

Stephen Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Theodore Fotios Burtzos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

A jury convicted the defendant of felony murder, armed robbery and home invasion; and he was sentenced to 40 years' imprisonment for murder, 30 years for armed robbery and 30 years for home invasion.

On October 18, 1984, at approximately 12:30 a.m., 64-year-old Moses Willis was in his second-story apartment at 4236 Cottage Grove Avenue in Chicago. Also present were his sister, Velma Harden, his niece, Grace Willis, and her children. The defendant and Charles Jones kicked in the door. The defendant struck Moses Willis with a gun and demanded money from him. He told Grace Willis to be quiet or he would kill her and her baby. Moses Willis was beaten at least

twice. He went out the window of his apartment and fell to his death. The autopsy disclosed that he died as a result of multiple injuries due to the fall with arteriosclerosis as a contributing factor. Grace Willis picked out the defendant's picture. He was arrested and confessed that he and Carlton Jones had kicked the door in; that he had struck Moses Willis; that Carlton Jones had a gun; that they got $5 or $6 from Moses Willis; that he held Moses Willis down while Jones searched the place for more money; that Moses Willis eventually got loose and jumped through the window; and he and Jones fled.

He and Jones were indicted jointly; but Jones pleaded guilty pursuant to an agreement with the State.

The defendant first contends that his convictions of armed robbery and home invasion should be reversed for lack of proof of the elements of those crimes independent of his confession. That being so, he argues, the murder conviction must also be reversed because that conviction was based on a death which allegedly occurred during the commission of a felony.

We note first that this argument was not raised in the post-trial motion, and, therefore, the State contends, any error was waived. The defendant answers that the waiver rule is not applicable when the error claimed is failure to prove a material allegation of the indictment, citing *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261. We agree with the defendant. If the absence of proof of a material allegation may not be waived in a post-trial motion, *a fortiori*, the absence of proof of the *corpus delicti* may not be waived, and we will consider that assignment of error. See *People v. Willingham* (1981), 92 Ill. App. 3d 1101, 416 N.E.2d 803, *rev'd on other grounds* (1982), 89 Ill. 2d 352, 432 N.E.2d 861.

The elements of home invasion are set out in section 12—11 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—11), which provides that a person commits home invasion when, without authority, he knowingly enters the dwelling place of another when he knows or has reason to know that a person is present and while armed with a dangerous weapon uses force or threatens force upon any person within the dwelling or intentionally causes any injury to any person within the dwelling. The elements of armed robbery are set out in section 18—1 (Ill. Rev. Stat. 1985, ch. 38, par. 18—1), which provides that a person commits armed robbery when he takes property from the person or presence of another by force or threatening the imminent use of force while armed with a dangerous weapon.

The defendant's argument boils down to the contention that there is no evidence apart from his confession that any property was taken;

therefore, no proof of robbery; and no evidence apart from the confession that entry was not made with permission; therefore, no proof of home invasion.

■ The fundamental rule is that every element of the *corpus delicti* need not be established beyond a reasonable doubt by evidence independent of a confession. The independent evidence need only tend to prove that an offense occurred and corroborate the facts contained in the confession. If the two requirements are satisfied, the independent evidence and the confession are sufficient to establish the *corpus delicti*. *People v. Stepteau* (1986), 142 Ill. App. 3d 400, 491 N.E.2d 851. See also *People v. Perfecto* (1962), 26 Ill. 2d 228, 186 N.E.2d 258.

■ Grace Willis, the deceased's niece, awoke because she heard her Uncle Moses screaming, "Get your hands off me, leave me alone." She saw the defendant in front of her uncle and another man behind him. Her uncle was pushed into her bedroom. The defendant pointed a gun at her and told her to lie down and that no one would get hurt. He struck her uncle in the face with his gun and repeatedly told him to give him money. The deceased said that he only had $2 and that the defendant could have it. She guessed that he took the money. After her uncle asked if he could put something on his face, which was bleeding from the blows, the defendant again started hitting him. When she told the defendant to stop hitting her uncle, the defendant ordered her to shut up or he would kill her and her baby. The defendant ordered her uncle to lie down on the floor, but he refused. Her uncle began to struggle with the defendant and both bumped into the refrigerator. She heard no sound for a moment, and then she saw her uncle sit on the bed. His breathing sounded as though he were having a heart attack. At that point he went to the window, opened it and went through it. Grace testified that she did not know if her uncle went out the window on his own or if he was pushed out.

The deceased's sister, Velma Harden, testified that she was awakened about 12:30 by noises in the bedroom. She heard a man demanding money from her brother and saw him struggling with him. She could not identify the man because she had a problem with her eyesight. He threatened to blow her brains out if she raised her head.

Annetta Allen, Grace Willis' daughter, testified that she was awakened by voices and hitting noises coming from her Aunt Velma's bedroom. A man's voice was demanding money from her Uncle Moses.

The independent evidence shows that the men were strangers to the people who testified, that one of them was armed with a gun, that

they used force and inflicted bodily injury on Moses Willis, that they demanded money, that Moses Willis offered them $2 and that Grace Willis guessed they took it. In our judgment the evidence independent of the defendant's confession satisfies the requirement that it tend to prove that the offenses of robbery and home invasion occurred. In fact, we are convinced that the elements of home invasion have been established beyond a reasonable doubt independent of the defendant's confession. We are not persuaded to hold otherwise because, as the defendant argues, Moses Willis may have let the two men into the house. It is not reasonable that he did, but if he did, it is immaterial. The cumulative independent evidence shows that regardless of how the defendant and codefendant gained access to the Willis home, they exceeded any possible original authority granted to them when they terrorized Willis and his family. *People v. Strong* (1984), 129 Ill. App. 3d 427, 472 N.E.2d 1152; *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178.

In his confession, the defendant said that it was Jones' plan to rob Willis, that Jones, whom he identified as "T," kicked the door down. He believed that "T" had a gun. While he was holding the deceased, "T" got about $5 or $6 from his pockets. They continued struggling with the deceased. He and "T" slapped and pushed the deceased around. They kept asking him for more money, but he kept saying he had none. We judge that the independent evidence and the confession taken together established the *corpus delicti* of armed robbery.

■ The defendant next contends that the trial court erred by permitting the book from which Grace Willis identified his picture to go to the jury. During the trial the book was used as an exhibit during the testimony of Grace Willis and Detective Popovitz. At the close of the evidence the book was offered into evidence, and the defendant objected to its going to the jury. The court said it would admit the book into evidence but would not send it to the jury. The court suggested that the defendant's photo be taken out of the book and sent to the jury alone, but the prosecutor said that this would not fairly represent the exhibit and indicated he would rather not send the single photo back without the book unless the jury asked for it. During deliberations, the jury requested to see the photo book, and the court granted the jury's request over the defendant's objection. The defendant argues that this was prejudicial error because it suggested to the jury that the defendant had been previously involved in crimes.

Grace Willis was the only person who identified the defendant in court; and her testimony on identification was crucial. She testified that she had looked through five or six books containing many pic-

tures, and she identified the defendant's picture. Officer Richard Popovitz testified that she looked at 200 or more pictures. He said there was no uncertainty about the identification; but he said in his report that her identification was "tentative." He explained that it was the usual practice to put down such an identification as "tentative" where a person identified someone from a photograph, unless that person knew the individual he was identifying.

Later Grace Willis viewed two lineups. She identified the defendant from one of them. She testified that she picked Davis out right away. She denied saying at the lineup that he looked like the man but that she could not be positive.

Detective Thomas Kelly was called by the defendant and testified that he conducted a lineup which Grace Willis viewed. He said that Grace Willis said that it looked like the man but she could not be positive. She was not any more positive after he let everyone in the lineup speak. No picture was taken of the lineup because it was department policy not to take a picture unless there was a positive identification.

The defense was an alibi. Both the defendant and his sister testified that on October 16, 1984, they were at choir practice early in the evening; they returned home after choir practice and watched television. He testified he went to bed. She said that she got up at 12 or 12:30 a.m. to go to the washroom and saw her brother sleeping.

Under the circumstances, we judge that the trial court did not abuse its discretion in permitting the book to go to the jury. Very recently this court passed on an identical contention in *People v. Bunch* (1987), 159 Ill. App. 3d 494, 512 N.E.2d 748. The court held, and we so hold here, that the police photograph book was not admitted to indicate the defendant's prior criminal activity but to show the jury the photograph from which the defendant was first identified by the eyewitness. It was also necessary to show the jury the accuracy with which the eyewitness identified the defendant and to allow the jury to judge the fairness of the photographic procedure. We note that the jury had already heard testimony from Popovitz and Grace Willis that the book contained many other pictures and that the defendant's picture was among them. Any possible prejudice to the defendant was far outweighed by the probative value of the exhibit. Moreover, we deem it significant that the jury requested the exhibit.

In the principal case cited by the defendant, *People v. Murdock* (1968), 39 Ill. 2d 553, 237 N.E.2d 442, the supreme court reversed a conviction and sentence of death on several grounds which included the introduction of "mug" shots taken for police files. The court said

that there was no probative purpose for their admission into evidence. As we have pointed out, there is a probative purpose for the admission of the photographs in this case.

■ The defendant next contends the trial court failed to instruct the jury properly.

At the conference on instructions, the State offered State's instruction No. 10 (Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981)), which reads as follows:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, he is committing the offense of armed robbery or home invasion."

The defendant offered no objection to that instruction. The State then offered State's instruction No. 11 (Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1981)), which reads in part as follows:

"To sustain the charge of murder, the State must prove the following propositions:

*First:* That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Moses Willis; and

*Second:* That when the defendant, or one for whose conduct he is legally responsible, did so, he was committing the offense of armed robbery or home invasion."

The defendant objected to that instruction on the ground that a variance existed between the indictment and the instruction in that the indictment alleged that the defendant had forced the victim out of the window while the State's instruction did not say that. The instruction was given over the defendant's specific objection. The defendant did not offer any instructions of his own.

During the deliberations the jury sent a note to the court requesting to see the photo book and also submitted the following two-part question:

"A. If the defendant is found guilty of armed robbery and home invasion, is the defendant automatically guilty of murder? If the answer to A is, yes, may we find the defendant guilty of a lesser degree of murder such as manslaughter?"

The court sent the following reply to the jury:

"You have heard all of the evidence and have been instructed on the law. Continue your deliberations."

The defendant made no objection to the court's reply and offered no suggestions. In his post-trial motion, the defendant asserted that the court's response to the jury's questions was error, but he did not allege that the court erred by not instructing the jury *sua sponte* that

the death of Willis must have been the direct and foreseeable consequence of the defendant's act before the defendant could be convicted. In this court, however, he now contends for the first time that the court had a duty to draft and give such an instruction.

Since the defendant did not object to the court's reply to the jury's questions or offer any suggestions, under the general rule any error would be waived. (*People v. Baes* (1981), 94 Ill. App. 3d 741, 744, 419 N.E.2d 47.) Similarly, the failure to offer the instruction now proposed would constitute a waiver. (*People v. Parks* (1976), 65 Ill. 2d 132, 137, 357 N.E.2d 487.) And, again, the failure to include in the post-trial motion the court's failure to instruct properly would ordinarily constitute waiver. (*People v. Rogers* (1975), 32 Ill. App. 3d 788, 336 N.E.2d 784.) This is not a factually close case that could invoke the plain error exception. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.) But, the defendant argues correctly that the court has the obligation to instruct the jury on the elements of the offense, and the failure to do so may not be waived. (*People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63, cited with approval in *People v. Parks* (1976), 65 Ill. 2d 132, 357 N.E.2d 487.) The issue in this case, therefore, becomes whether the jury was instructed properly on the *elements* of felony murder.

Supreme Court Rule 451 provides that an IPI-Criminal instruction shall be used unless the court determines that it does not accurately state the law. (107 Ill. 2d R. 451.) As we have pointed out, the defendant did not object on the ground now advanced to the State's instruction No. 11 (Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1981)), which sets out the elements of felony murder. The instruction does not say that the State must prove that death was the direct and foreseeable consequence of the acts of the defendant or one for whom he is legally responsible. In sum, the defendant is now asking us to supply what the drafting committee and the supreme court, which has passed on this instruction, have not deemed necessary.

In support of his argument, the defendant refers to an opinion by the supreme court and two appellate court opinions, *People v. Hickman* (1974), 59 Ill. 2d 89, 319 N.E.2d 511, *People v. Brown* (1979), 70 Ill. App. 3d 922, 388 N.E.2d 1256, *People v. Burke* (1980), 85 Ill. App. 3d 939, 407 N.E.2d 728.

In *People v. Brown*, the defendant was fleeing from the scene of a robbery when the car in which he was riding as a passenger collided with another car, killing three occupants of the other car. The principal issue in that case was accountability, since the defendant was not driving the car. In affirming the conviction, the court said that "fel-

ons are held culpable for the acts of another which cause the deaths of innocent third parties when the deaths are 'proximately caused' by the commission of the felony." (70 Ill. App. 3d at 925-26.) The court then cited *People v. Hickman* as authority for the statement that an element of felony murder is evidence that death was a direct and foreseeable consequence of the felony. *People v. Brown,* 70 Ill. App. 3d at 925-26.

In *People v. Burke,* under facts similar to *People v. Brown,* the defendant was convicted of felony murder after a bench trial. The appellate court, citing *Brown* and *Hickman,* said that an element of the charge is evidence that the death was a direct and foreseeable consequence of the felony. *People v. Burke,* 85 Ill. App. 3d at 941.

We emphasize that the statements of the appellate courts were not necessary to the decisions, and we do not believe that *People v. Hickman* is authority for those statements.

In *Hickman* the supreme court affirmed a conviction of felony murder where one police officer mistakenly killed another police officer while attempting to apprehend the defendant in the course of a burglary. The supreme court said that the commission of the burglary and the flight of the defendant set in motion the pursuit by armed police officers. The court added that the fatal shot was fired in opposition to the escape and was a "direct and foreseeable consequence of defendants' actions." (*Hickman,* 59 Ill. 2d at 94.) It did not say that death as a direct and foreseeable consequence of the defendants' act was an element of the offense. We do not believe that the factual observation made by the *Hickman* court that the killing in that case was, in fact, "a direct and foreseeable action" may be raised to the stature of a pronouncement of what is an essential element to be proved.

It is significant that the *Hickman* opinion quotes from *People v. Smith* (1974), 56 Ill. 2d 328, 307 N.E.2d 353, a case strikingly similar to the facts in this case. In *Smith* the deceased came to her death when she jumped from her third-floor apartment after the defendant told her he was going to kill her. He contended the felony-murder section was not applicable because "the deceased, unprovoked by the defendant in the commission of a burglary, jumped to her death." The supreme court did not agree "that the conduct of the deceased was unprovoked by the defendant." It pointed out that it was immaterial whether the killing was unintentional or accidental and concluded with the following pertinent language (*Smith,* 56 Ill. 2d at 333-34):

> "It is unimportant that the defendant did not *anticipate* the precise sequence of events that followed upon his entry into the

apartment of [the deceased]. His unlawful acts precipitated those events, and he is responsible for the consequences." (Emphasis added.)

That language was quoted also in *People v. Hickman*. "Anticipate" is defined as, "[t]o feel or realize beforehand; foresee." (The American Heritage Dictionary of the English Language 57 (1969); see also Webster's Third New International Dictionary (1981) ("to consider in advance," "to foresee and satisfy or fulfill beforehand.").) To say, therefore, that a defendant. need not anticipate that the deceased would jump out a window in the course of the robbery is the equivalent of saying that the defendant need not have foreseen that the deceased would do so.

The defendant argues that the instruction is necessary under the peculiar facts of this case. We reject that argument. If it is a necessary instruction in this case, it should be a necessary instruction in all felony-murder cases. The facts of this case are no more peculiar than those in *Brown*, *Hickman* or *Burke*. Neither the drafters of the pattern instructions, nor the supreme court, which has passed on this instruction on a number of occasions, apparently think that the language proposed by the defendant here belongs in the pattern instruction. We are not prepared to encourage a revival of the discredited practice of culling passages from opinions and incorporating them into instructions contrary to the purpose for which the drafting committees on jury instructions were created and to the mandate of Rule 451.

After oral argument the defendant called our attention to *People v. Brouder* (1988), 168 Ill. App. 3d 938, and *People v. Flynn* (1988), 172 Ill. App. 3d 318. Those cases do not support the defendant's position. In *Brouder* it was the defendant's attorney who submitted an instruction to the court after the jury requested a definition of "knowingly resisting arrest." Moreover, the instruction tendered and refused was derived from a pattern instruction. In *Flynn*, the issue before the appellate court was whether the trial court should have answered two questions propounded by the jury. That is not the issue here. The defendant does not assign as error here the refusal of the trial court to answer the questions. Rather, the defendant contends that the trial court should have drafted and given an instruction—an instruction which we hold to be erroneous. Without expressing an agreement or disagreement with the holding in *People v. Flynn*, we simply state that it is not apposite.

■ The defendant next assigns as error the prosecutor's closing argument. Of all the arguments now assigned as error, only one was

objected to at trial and none was specified in the post-trial motion. The defendant has not responded to the State's argument that any claim of error was waived. After considering all of the arguments of which the defendant now complains, with two exceptions, we think that they were proper comments on the evidence or were permissible appeals to the jury to enforce the law. For example, the prosecutor told the jury that there was no question that the apartment was entered by force, that the deceased was beaten, that property was taken and that he went to his death as a result of the home invasion and armed robbery. That is not an improper argument.

Later, the prosecutor argued that Willis could do nothing with his "face probably caved in already from the beating." Where a prosecutor's argument is based on the facts and evidence and the inferences which may be drawn therefrom, the argument is proper. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011.) The evidence established that the defendant had hit the deceased in the face with his pistol on a number of occasions. His face was swollen, cut and bleeding. The autopsy showed that the bones in his face had been fractured and that he had hemorrhaged. It is a reasonable inference that some of the broken bones in his face had been caused by the beatings. That also was a proper argument.

At another point, the prosecutor argued that it did not make any difference if the deceased had been thrown, pushed, or jumped from the window. He then said the following:

> "As a matter of fact, if Moses Willis had died of a heart attack in that apartment while this was going on, it would still be felony murder."

An objection was overruled. The rest of that argument contained an explanation of the applicable law that the trial court would give the jury. While we have misgivings about the prosecutor's assertion that death from a heart attack would trigger the application of the felony-murder rule, we note that the jury was aware that such was not the fact, and we believe that the rest of the prosecutor's statement correctly stated the law. We do not believe this hypothetical statement of the prosecutor was prejudicial error.

There is one argument of the prosecutor that should be discussed, although no objection was made to it, nor was it assigned specifically in the post-trial motion. The prosecutor argued as follows:

> "That's the man who took the uncle that I love from me. That's the man who took that property from me. Well, what property did he take? Well, I think he took some money. Did he take anything else? Yes, he took the most important property

we had, the life of my uncle."

The practice of invoking the deceased's family and the death's impact on them persists with rugged endurance despite the efforts of the courts to end it. (See, *e.g.*, *People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120; *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) But the question is whether the references are sufficiently prejudicial to warrant reversal. (*People v. Vasquez* (1969), 118 Ill. App. 2d 66, 254 N.E.2d 617.) Many cases, while condemning the practice, have affirmed convictions after considering all of the evidence. (*People v. Neal* (1985), 111 Ill. 2d 180, 489 N.E.2d 485; *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59; *People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945; *People v. Alerte* (1983), 120 Ill. App. 3d 962, 458 N.E.2d 1106.) We believe that this is such a case. The fleeting reference to the family of the deceased, of which the jury was already aware, was not, considering all of the evidence, such that would prevent the jury from considering any evidence favorable to the defendant.

At this juncture it is appropriate that we discuss another error that occurred. During the direct examination of Velma Harden, the prosecutor asked whether she had a conversation that day with the deceased as to whether or not he had sold anything. She answered that he had because they were talking about her little niece with a hole in her shoe and he said he was going to get all the children some gym shoes. An objection was sustained. Then the prosecutor asked whether Willis told her where he would get the money to "do this." The witness answered that he did not; that he just told the children he was going to get them some shoes. An objection was sustained. Then the prosecutor asked whether the deceased told her he sold a refrigerator that day. The witness answered that he had. An objection was sustained and the jury was instructed to disregard the answers. In spite of the court's ruling, when Annetta Allen testified later, she was asked whether she remembered what she and the deceased talked about before she went to sleep. She answered that she did not remember, and she was then asked what they talked about. She answered that he said he was going to buy her little sister some house shoes. An objection was overruled.

We agree that this evidence was improper, as the trial court initially held. The persistence of the State in the face of the court's ruling is to be criticized. The State now seeks to justify the questions as an attempt to show that the deceased had come into a large sum of money that day. It is obvious that the State was trying to establish a fact by the statement of the deceased. That is hearsay. Moreover, the

answers were such as to create sympathy for the deceased.

The State alternatively argues that Annetta Allen was a life and death witness and her testimony established that the deceased was a "living, talking, viable human being who was capable of having an intelligent conversation with his niece." Our restrained response to that argument is that it is bereft of any persuasiveness.

But again we note that the defendant did not assign this error in his post-trial motion, and unless we can say that the evidence constituted plain error affecting substantial rights, the error is waived. (*People v. Friesland,* 109 Ill. 2d at 375.) We believe in view of the State's evidence that the inappropriate testimony had no affect on the jury's verdict. Under these circumstances, we do not believe the evidence affected any substantial right of the defendant. See *People v. Holloway* (1983), 119 Ill. App. 3d 1014, 457 N.E.2d 466; *People v. Mitchell* (1987), 163 Ill. App. 3d 58, 516 N.E.2d 500.

■ The defendant next contends that the court abused its discretion in sentencing him to 40 years for murder, 30 years for robbery and 30 years for home invasion. He emphasizes that he had no previous record and the codefendant received eight years for robbery and home invasion after the State dismissed the murder charge pursuant to a plea agreement.

It is not proper for a reviewing court to substitute its judgment for that of a trial court unless it is clear that the trial court abused its discretion. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422.) The evidence shows that the defendant broke into the home of a group of innocent people, including small children; threatened to kill a mother and her child; repeatedly pistol-whipped a 64-year-old man who offered all the money he had; and caused that man to jump or fall to his death to avoid any further beating. We cannot and will not say that the trial court abused its discretion.

The defendant's complaint now of the disparity between his sentence and that of the codefendant was not raised at the time of sentencing and is waived. (*People v. Clark* (1987), 160 Ill. App. 3d 877, 513 N.E.2d 937.) Even if waiver were not applicable, we would reject the defendant's argument. The evidence shows that his conduct was more egregious than that of his codefendant. The codefendant was not adjudged guilty of murder, and the fact he pleaded guilty is entitled to consideration. *People v. Ward,* 113 Ill. 2d at 526.

■ The defendant next contends that armed robbery and home invasion are lesser included offenses of felony murder and that those convictions and sentences must be vacated. In support of that argument the defendant cites two cases from the Appellate Court, Third

314

District, *People v. Jordan* (1983), 116 Ill. App. 3d 269, 452 N.E.2d 93, and *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823. The defendant concedes that those cases are at odds with the holding of the supreme court in *People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9, but he asks us to refuse to follow *Green.* First, we are not so presumptuous, as an intermediate court of review, that we would arrogate the right to gainsay our highest court of review. Second, this district has addressed the same point in *People v. Plummer* (1986), 151 Ill. App. 3d 94, 506 N.E.2d 592, which followed the supreme court's pronouncement.

For all these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC and SCARIANO, JJ., concur.