THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBBIE LEE JORDAN, Defendant-Appellant.

Third District   No. 82—21

Opinion filed July 8, 1983.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of coun-

sel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Robbie Lee Jordan, was found guilty, after a jury trial, of the offenses of felony murder and burglary, in violation of sections 9—1(a)(3) and 19—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(3), 19—1, respectively). The defendant was sentenced to concurrent terms of imprisonment of 25 years (for felony murder) and seven years (for burglary). The defendant raises three issues on appeal, as follows: (1) whether the trial court improperly denied the defendant's motion to suppress where an informant was planted in the defendant's jail cell for the purpose of eliciting incriminatory statements in violation of his sixth amendment right to counsel; (2) whether the trial court erred in answering a question from the jury during deliberations where the question required the judge to respond with a conclusion based on his own evaluation of the evidence and where, in any event, the court's answer was inaccurate; (3) whether the defendant's conviction and concurrent sentence for the felony of burglary must be vacated because it is a lesser included offense of felony murder.

On September 22, 1980, the defendant broke into Herb's Lounge, in Joliet, in order to steal money. In the course of the burglary, the defendant shot and killed the night watchman. The defendant was arrested and jailed. While in jail, the defendant was placed in a cell with Mr. Allen. Allen had, just a few days earlier, provided a deputy of the jail, Officer Miller, with statements made by a cellmate concerning the cellmate's crime. In return for the information, Allen was allowed extra phone privileges. Apparently, the defendant shared his cell with two other men, besides Allen. They were Mr. Cummings and Mr. Williamson. At the trial, Allen testified he overheard the defendant tell Cummings how he had broken into Herb's Lounge and killed the night watchman. Allen relayed this information to Officer Miller. Defense counsel moved to suppress the admissions obtained by Allen on the ground the incriminating statements were elicited from the defendant in violation of his sixth amendment right to counsel because Mr. Allen was actually a paid informant. On cross-examination, Officer Miller admitted he and Allen had, at some point, discussed Allen's becoming an informant for the State. Miller believed this conversation took place after the defendant had been moved into Allen's cell. But, he was not sure exactly when the conversation took place. Officer Miller did not recall talking to Allen about obtaining information from the defendant. Williamson testified Allen often asked fellow

prisoners about their cases. However, Williamson did not recall Allen questioning the defendant about his crime. After hearing arguments of counsel, the trial court, relying upon the United States Supreme Court's decision in *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183, denied the motion to suppress because Allen, whether he was an informant or not, did not actively elicit the statement by the defendant.

The first issue is whether the trial court improperly denied the defendant's motion to suppress where an informant was planted in the defendant's jail cell for the purpose of eliciting incriminatory statements in violation of his sixth amendment right to counsel. The trial court never decided whether Allen was in fact a paid informant for the police. The trial court did find that Allen simply overheard the statements of the defendant and did not engage in conversation with the defendant. The leading case, applicable to the issue at hand, is *United States v. Henry*. In *Henry*, a paid police informant engaged in some conversation with the defendant and the defendant's incriminatory statements were the product of this conversation. The court noted three important factors. First, the informant was acting under instructions as a paid informant; second, the informant was ostensibly no more than a fellow inmate of the defendant; and third, the defendant was in custody and under indictment at the time he *was engaged in conversation by the informant.* (447 U.S. 264, 270, 65 L. Ed. 2d 115, 122, 100 S. Ct. 2183, 2187.) The *Henry* majority's opinion did not decide whether the exclusionary rule, as established in *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, could be extended to a case where a paid informant overhears but does not engage the defendant in conversation in order to elicit the incriminating information from the defendant. Nonetheless, in light of the narrow holding of the majority opinion (447 U.S. 264, 271 n.9, 65 L. Ed. 2d 115, 123 n.9, 100 S. Ct. 2183, 2187 n.9), the instructive concurrence of Justice Powell (447 U.S. 264, 276-77, 65 L. Ed. 2d 115, 126, 100 S. Ct. 2183, 2190), and the dissent of Justices Blackmun and White (447 U.S. 264, 278-80, 287, 65 L. Ed. 2d 115, 127-28, 133, 100 S. Ct. 2183, 2190-92, 2195), and the dissent of Justice Rehnquist (447 U.S. 264, 302, 65 L. Ed. 2d 115, 142-43, 100 S. Ct. 2183, 2203), it is appropriate to conclude that *Massiah* does not prohibit the introduction of statements of a defendant which were overheard by a paid police informant. In the case at hand, the trial court found the alleged informant, Allen, only overheard the defendant's statements and did not engage in conversation with the defendant in order to elicit the incriminatory statements. Therefore, the trial court was correct in de-

ciding that the testimony of Allen, concerning the admissions of the defendant, was admissible, regardless of whether Allen was a paid informant, because the incriminating information was not elicited by Allen.

■ The second issue presented by the defendant concerns the trial court's review of the testimony given at the trial. It is not disputed that it is within the trial court's discretion to allow a jury's request to review the testimony. Indeed, it is error for the court not to exercise this discretion. (*People v. Briggman* (1974), 21 Ill. App. 3d 747, 750.) The defendant questions the manner by which the trial judge reviewed the testimony. The defendant argues the trial court erred in answering a question from the jury during deliberations where the question required the judge to respond with a conclusion based on his own evaluation of the evidence and where, in any event, the court's answer was inaccurate. We shall review the allegation of inaccuracy first.

Among the three questions sent to the trial court during deliberations was the following:

"In reference to the latent fingerprints, where were all the latent prints specifically found[?]"

Over a defense objection, the trial court responded as follows:

"The latent lifts on People's Exhibit 4, according to the testimony, were found on the inside face of the cash register.

The latent lifts on People's No. 3, according to the testimony, were found on the gum box."

The correct answer would have been as follows: In People's exhibit No. 3, two latent prints were found on the "face of the cash register drawer front." A third latent print was recovered from the outside of the door which houses the money box on the pinball machine. In People's exhibit No. 4, latent prints were found on the gum box. ·

■ ■ First, the mix-up of the exhibit numbers is inconsequential. The jury did not inquire as to which exhibit showed what facts. The jury simply asked where the prints were found. Second, the failure of the court to mention the print on the cash box of the pinball machine was not harmful, but beneficial, to the defendant. At trial, the defendant attempted to explain the presence of his prints on the cash box and pinball machine. Defendant's witnesses testified the defendant often "helped out" at the Lounge and worked behind the bar. The owners of the Lounge testified the defendant never "helped out" and the defendant was not allowed behind the bar. If the jury believed the defendant's witnesses, then the presence of prints on the pinball machine would have been meaningless to the State's case. As for the

defendant's defense, they would have been just another set of prints. However, if the jury did not believe the defendant's witnesses (the verdict against the defendant strongly suggests the jury did not believe the defendant's witnesses), then the omission of the prints was beneficial to the defendant because there was, thus, one less bit of evidence against the defendant. The defendant cannot complain of error which favors his case. (See *People v. Pierce* (1974), 56 Ill. 2d 361, 364.) Third, the defendant also points to the court's incorrect statement that the prints were found on "the inside face of the cash register." The correct response would have been that the prints were found on the "face of the cash register drawer front." The defendant argues the statement of the trial judge influenced the conclusion of the jury and prejudiced the defendant because the statement suggests the defendant tampered with the cash register. Whereas, apparently, the correct response suggests the print on the front of the cash register was placed by the defendant when he was "helping out." We believe the judge stated the fact as it substantially appeared in the record and the statement of the trial judge did not change the meaning of the original testimony. The State did not, at trial, argue the defendant tampered with the cash register. The prints were used to show that the defendant had his hands in the till. Furthermore, the statement of the judge does not state or imply the defendant tampered with the cash register. Again, the importance of the location of the prints depended upon the decision of the jury to believe or not to believe the witnesses and explanation of the defendant. Obviously, the trial judge would have done better by answering the question of the jury with a response directly from the record. Had he consulted the record, this issue would not now be before this court. However, the slight inaccuracies found in the court's response do not take on the proportions of reversible error.

This court also finds that the trial judge did not respond with a conclusion based on his own evaluation of the evidence. The judge informed the jury of the fingerprint evidence which was established by the undisputed testimony of the police officers. The trial judge did not suggest any conclusions as to why the defendant's prints were found at the scene of the crime. The judge simply told the jury where the prints were found at the scene. It cannot be said that the trial court invaded the province of the jury with regard to findings of fact, nor can it be said that the judge's response influenced the findings of the jury. Therefore, for the foregoing reasons, we find the trial court did not commit reversible error in its review of the testimony for the jury.

■ The third, and final, issue is whether the defendant's conviction and concurrent sentence for the felony of burglary must be vacated because it is a lesser included offense of felony-murder. In Illinois a lesser included offense is statutorily defined as follows:

"Included offense. 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, *or*

(b) Consists of an attempt to commit the offense charged *or an offense included therein.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 2—9.)

Felony murder in Illinois is defined as:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

\* \* \*

(3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3).)

Forcible felony is defined as follows:

" 'Forcible felony' means treason, murder, voluntary manslaughter, rape, robbery, *burglary*, arson, kidnaping, aggravated battery and any other felony which involves the use or threat of physical force or violence against any individual." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 2—8.

In the case of felony murder the underlying felony is a lesser included offense because the felony, which in the case at bar was burglary, is established by proof of the same or less than all of the facts required to establish the offense of murder in the course of a burglary. This form of a lesser included offense has been further defined judicially as " ' "one composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense [citation] so that it is impossible to commit the greater offense without necessarily committing the lesser offense." ' " *People v. Devine* (1981), 98 Ill. App. 3d 914, 924.

For the foregoing reasons the defendant's burglary conviction is reversed and his sentence for said offense vacated.

Affirmed in part; reversed in part.

BARRY and SCOTT, JJ., concur.