THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TYRONE PLUMMER, Defendant-Appellant.

First District (2nd Division)   No. 85—705

Opinion filed December 23, 1986.

Steven Clark, of State Appellate Defender's Office, of Chicago (Thomas J. Frederick, of Winston & Strawn, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant appeals his convictions of three counts of murder and one count of armed robbery. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—1(a)(3), 18—2(a).) He was sentenced to a term of imprisonment of 32 years solely on the felony murder conviction (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(3)), not on the other three convictions (only one death resulted from his actions). His probation on a previous drug conviction was revoked, and he was resentenced to concurrently serve seven years on that conviction.

His appeal raises as issues whether: (1) there was error in his conviction on three counts of murder and one count of armed robbery; (2)

he was proved guilty of murder and armed robbery beyond a reasonable doubt; (3) the prosecutor's closing argument was improper; (4) the simultaneous bench trials of defendant and a codefendant were error; (5) he was denied effective assistance of counsel; (6) the cumulative effect of errors asserted denied him a fair trial; (7) sentencing defendant on his felony murder conviction was error; and (8) sentencing defendant on his probation violation was error.

The facts reveal that defendant was a pimp. His prostitute, Patricia Gray, solicited the victim, Fred Williams, around midnight on February 22, 1984, and went with him to the Esquire Hotel. The victim was very drunk and argued with Gray about the length of time she was to stay with him. The victim eventually agreed to one hour for $20, but had only a $50 bill and an additional $8. Gray had no change. The victim went to get change. While he was gone, Gray went through the pockets of his jacket removing a long, folding knife. The victim returned and told Gray that he would have to leave the hotel to get change. Apparently, as a showing of good faith, he gave Gray the $8. Gray left the room saying that she had to use the bathroom and left the hotel to meet defendant.

Defendant was at that time in a parked car in front of the hotel with another pimp, Mack Davis, and his prostitute, Lisa Avant. Defendant left the parked car and questioned Gray, who had been in the hotel for nearly an hour. She gave him the victim's knife, but not the $8. Avant, who was still in the car, heard defendant ask if $8 was all Gray had and then sent her back into the hotel to get some more.

Gray returned to the hotel room. The victim had his jacket on and told her that he was going out to get change. She went with him. On their way out, Gray saw defendant in the hotel lobby talking with the desk clerk. He followed them out of the hotel to the sidewalk where defendant demanded the $50 from the victim. The victim refused and defendant hit him in the face with his fist. Defendant and the victim walked a short way together. Davis then got out of his car and struck the victim on the head with a 2- or 3-foot rubber hose. The victim then gave Gray the $50 bill. Davis took a wallet from the victim, who was still standing, and gave it to Gray, who threw it down and ran across the street.

Avant saw defendant hit the victim again and then stab him in the chest. The car in which Avant was seated was parked about 25 feet from defendant, Davis, and the victim. Defendant, testifying on his own behalf, stated that if he stabbed the victim, and he did not realize it as he did it, the stabbing probably happened when the victim fell against him after being struck from behind by Davis. The victim died

from a stab wound to the heart which had passed through the cartilage of the sternum.

Defendant, Davis, and Gray then got into the car with Avant, who stated that defendant gave her a wallet and the knife, which was bloody. She gave defendant the money from the victim. She saw the victim slide down from the fence that he was propped up against and asked what happened. According to Gray, defendant then stated either "I stabbed him. *** It went in too easy," or "I think I stabbed the man." According to defendant, he said: "Man, I just have stabbed him. It went in awfully easy."

Davis then drove the car to the lakeshore where defendant told Gray to throw away the wallet and the knife. Another wallet, identified as the victim's, was thrown down near his body; Gray, Avant, and defendant each testified that a wallet taken from the victim was in the car after the killing.

Defendant and Davis were arrested on February 24, 1984, and indicted on three counts of murder, one count of armed robbery, and one count of armed violence each.

Prior to trial, defendant went through four changes of attorney. On October 31, 1984, William O'Neal, private counsel, was retained and the public defender's office moved to withdraw. The court denied the motion, and both O'Neal and the public defender represented defendant at trial and in the post-trial proceedings. O'Neal stated that he could be ready for trial by December 3, 1984, but when that date arrived, moved for a continuance. The continuance was denied and proceedings commenced on December 4, 1984. Defendant had moved to sever his trial from that of Davis, which was granted, but the trials proceeded simultaneously by bench trial before one judge.

The armed-violence count was subsequently dismissed during trial, and defendant was found guilty on all three counts of murder and the armed-robbery count. Davis was found not guilty on all counts. Defendant was then sentenced to a term of 32 years for felony murder and a concurrent 7-year term for violation of probation.

I

■ Defendant initially contends that the circuit court erred in convicting him of three counts of murder and one count of armed robbery. The circuit court found defendant guilty under the three different statutory theories of murder and convicted him of each (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), 9—1(a)(2), 9—1(a)(3)), finding that defendant's acts satisfied each of these definitions and accordingly convicted him of all three. He was sentenced only on the felony mur-

der conviction, however. Since there was only one victim and only one murder, three murder convictions were improper. (See *People v. Szabo* (1983), 94 Ill. 2d 327, 350, 447 N.E.2d 193.) Defendant's further contention that this court must determine which of the murder theories is the most serious, retain that most serious conviction, and then remand for resentencing is correct. In *People v. Mack* (1984), 105 Ill. 2d 103, 137, 473 N.E.2d 880, defendant also was convicted of three counts of murder. The supreme court considered the intentional and knowing killing crime to be most serious because it involves a more culpable mental state than the crimes of shooting with knowledge of a strong probability of death or shooting in the course of an armed robbery and remanded for resentencing. (See also *People v. Kane* (1986), 140 Ill. App. 3d 928, 932, 489 N.E.2d 500.) Accordingly, we affirm the conviction on defendant's intent to kill or do great bodily harm, vacate the other two convictions, and remand for resentencing.

■ Defendant's assertion that his felony murder and armed-robbery convictions cannot stand together, because armed robbery is a lesser included offense, has been explicitly rejected by our supreme court. (*People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9, *cert. denied* (1976), 426 U.S. 925, 49 L. Ed. 2d 379, 96 S. Ct. 2635.) Defendant's reliance upon *People v. Devine* (1981), 98 Ill. App. 3d 914, 923-24, 424 N.E.2d 823, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490, is misplaced. In *Devine, Green* was neither mentioned nor distinguished. Accordingly, we must rely upon the Illinois Supreme Court decision.

## II

■ Defendant contends that he was not found guilty of armed robbery beyond a reasonable doubt because the State never proved the robbery. There was testimony, however, proving that defendant demanded money from the victim, the money "due" his prostitute. Defendant then hit the victim in the face two or three times; defendant had the knife out and open and, when he left, still with the victim's knife, the victim was lying dead, stabbed in the heart. Defendant's challenge of the proof of armed robbery, by asserting that he was not shown to have been the one that actually took the wallet or money from the victim, fails since two of the witnesses, Gray and Avant, testified that defendant initially demanded the money from the victim, that it was taken at his direction, and that defendant eventually ended up with the money.

Defendant additionally claims an absence of proof that the robbery was committed with a dangerous weapon. The record shows,

however, that the victim was robbed by defendant at knifepoint. He was left dead with a knife wound in his heart. Defendant reportedly acknowledged that stabbing soon thereafter, remarking on how easily the knife entered the victim's body. We find no error.

■■ With respect to proof of defendant's guilt as to the victim's murder beyond a reasonable doubt, we find ample evidence in the record, which the court could have believed, to support his conviction under section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1)). That evidence reveals that defendant was armed with the subject knife when he approached Gray and the victim. He had previously laid down a tire iron in the vicinity. He demanded money from the victim, who was not armed. He proceeded to punch the victim, who only stayed on his feet by holding on to a nearby fence. He then forcibly caused the removal of money from the victim's pocket. The victim did not strike defendant and made no effort to secure the return of his knife. Davis then approached the victim and defendant and struck the former on the side of his head with a rubber hose. The victim still did not fight back. Thereafter, defendant stabbed the victim in the chest.

The medical testimony revealed that the victim died of a 2-inch stab wound which lacerated his heart. In addition, multiple lacerations and abrasions were found on his head and face.

Gray, Avant, Davis, and defendant then drove to the lakeshore. Defendant told Davis, "Butch, I stabbed him," and "It went in too easy." Defendant asked Gray whether she had more money and she gave the victim's wallet to defendant. At the lakeshore, defendant directed Gray to throw the wallet and bloody knife into the lake. Defendant washed blood off his hands.

Defendant contends that the evidence requires a conclusion of an accidental stabbing because the victim fell into him, after being struck with the rubber hose by Davis, and defendant pushed him away. The circuit court had the right to weigh this evidence and disregard it in light of defendant's later admissions that he stabbed the victim and the knife went in too easy, as well as evidence of defendant's post-crime activities in disposing of the evidence. We find no error in defendant's conviction of intentional murder.

III

■■ Defendant urges error in the prosecutor's closing argument which concerned the stab wound as passing through the sternum and its characterization as bone. The pathologist who testified about the fatal wound stated that it went through cartilage that was part of the

sternum. He described cartilage as similar to bone, but softer. The misstatement in closing was that the pathologist had described the sternum as bone, which it is in part, but the error was that the part penetrated was cartilage instead of bone. In this instance it is difficult to see that prejudice resulted, especially since this was a bench trial.

Defendant also asserts that there was no evidence to support comment about two wallets being taken from the victim. Gray testified that she threw down the wallet given her by Davis at the scene and that defendant gave her another wallet when they were in the car, driving away. As such, this was merely a recap of testimony actually given. There was no error.

## IV

■ Defendant next asserts that the double bench trial was an abuse of discretion. Defendant's express objection to this procedure was founded on self-incrimination concerns. This objection was overcome by the court's subsequent conduct of the trials as separate as to the defendants, so that one could not cross-examine the other. Defendant voiced no objection to that procedure when offered by the court and therefore waived any appeal of that issue.

## V

■ Defendant next argues ineffective assistance of counsel. He first contends that the circuit court's denial of a continuance just prior to trial was unfair. Privately retained counsel initially appeared on October 31, 1984, and agreed that he would be ready to proceed to trial on December 3, 1984. In order to aid defendant, the court denied the public defender's motion to withdraw and directed the defender to continue on the case. On December 3, 1984, defense counsel requested a continuance because of the addition of three prosecution witnesses. The court denied the motion but directed the State to make the witnesses available to defendant and then told defense counsel that if, after talking with the witnesses, they discovered that they needed additional time, they could renew their motion for a continuance. The motion was not renewed.

Defendant additionally contends that certain errors by counsel constituted ineffective assistance of counsel. First, there is the failure of counsel to object to references in closing argument to two wallets. Defendant contends that no evidence was admitted against him of two wallets. Gray testified about a wallet that she dropped at the scene and a wallet in the car after the murder, however, and defendant himself admitted that a wallet was in the car after the murder. Coupled

with Gray's testimony that she threw a wallet down at the scene, an inference may be drawn that there were two wallets.

Defendant also asserts that no attempt was made to contact a witness named "Bottle Bill" who drove up and talked to defendant during the murder. The defense fails to demonstrate how this witness would have aided defendant; that defense counsel did or did not try to contact him; or even that "Bottle Bill" existed. In this posture, it is difficult to assess such an omission as prejudicial. Additionally, defendant asserts ineffective assistance of counsel for the failure to diligently pursue two witnesses for impeaching Avant. The effect of potential testimony of witnesses, sought for impeachment and not for substantive value, also leaves the alleged resultant prejudice conjectural.

## VI

■ Defendant claims the cumulative effect of all of his asserted errors as having denied him a fair trial. Most of his asserted errors are not, in fact, sustainable as errors. Defendant's list of a series of errors, which he contends constitute reversible error due to their accumulated weight, includes: (1) the admission of three statements impeaching defendant; (2) allowing a detective to testify as an expert about a slit in defendant's jacket; (3) the admission of a photograph of the fatal wound, which was not included in the appellate record; (4) the denial of the public defender's motion to withdraw; and (5) the denial of the defense motion for a continuance. None of these alleged errors warrants reversal either alone, in combination, or cumulatively.

## VII

■ Finally, defendant contends that the circuit court erred in sentencing him to the maximum for his probation violation contending that since his original sentence was for 2½ years' probation and the new sentence is for seven years imprisonment, the court improperly considered his subsequent crimes in resentencing. The new sentence falls within the statutory range of prescribed sentences for possession of cannabis with intent to deliver. Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—4(e).

■ As to the sufficiency of the hearing to revoke probation, at the close of sentencing, the court merely announced the imposition of sentence upon the probation violation. The earlier conviction had been in the same court, and that court has now found defendant guilty of additional felonies; however, the *pro forma* revocation of probation and substitution of a seven year sentence appears to have been done

without any notice to defendant other than his knowing, as a practical matter, that it would probably occur. This was error, and the cause must also be remanded for a hearing. See Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—4; *People v. Butler* (1985), 137 Ill. App. 3d 704, 722, 484 N.E.2d 921; *People v. Coleman* (1983), 120 Ill. App. 3d 619, 458 N.E.2d 634, *aff'd* (1985), 105 Ill. 2d 290; *People v. Morales* (1971), 2 Ill. App. 3d 358, 359-60, 276 N.E.2d 391.

Accordingly, the conviction of intentional murder will be affirmed and the cause remanded for sentencing on this conviction; the conviction of armed robbery will be affirmed; the two other convictions of murder will be vacated as will the sentence on felony murder; and the revocation of probation and resentencing will be vacated and remanded for a hearing.

Affirmed in part; vacated in part and remanded.

BILANDIC, P.J., and SCARIANO, J., concur.