THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORIO CARDONA, Defendant-Appellant.

First District (2nd Division)   No. 1—89—1461

Opinion filed December 8, 1992.

112

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Maureen Harton, and Kathleen Bom, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Gregorio Cardona, his brother Roberto, and four other persons participated in a residential burglary in which one of the burglars killed the homeowner. A jury found defendant guilty of murder and residential burglary, and the trial court imposed consecutive sentences of 40 and 15 years' imprisonment for the crimes. Defendant appeals from these convictions.

We affirm the conviction for felony murder. The trial court committed no reversible error in its evidentiary rulings. The trial court properly inferred from the jury verdict the jury's intention to convict defendant for felony murder. Since the verdict could not support an inference that the jury found intentional murder, we vacate the conviction for that count. We vacate the conviction for residential burglary as that is a lesser-included offense of the felony murder. Finally, we affirm the sentence the trial court imposed for felony murder. We discuss the facts pertinent to each issue separately.

I

On June 23, 1987, Raymond Carvis died in his home due to multiple stab wounds. His house was ransacked and stereo equipment and jewelry were missing.

A few days later Roberto Cardona sold on the street some jewelry which police believed to be that which had been taken from Carvis' home. When police questioned Roberto, he told them that on June 23, 1987, he saw Lowell Higgins-Bey and Michael McCastle burglarizing Carvis' home.

Police arrested Higgins-Bey and McCastle and told them, in separate interviews, that Roberto implicated them in the burglary. Higgins-Bey told police that he participated in the burglary with McCastle, Roberto and defendant. McCastle also admitted participating in the burglary and implicated defendant as another participant. Confronted with these statements, Roberto admitted that he and defendant had participated in the burglary. Police arrested defendant about

two hours after Roberto made this admission, after 11 p.m. on July 15, 1987, without obtaining a warrant.

The trial court denied defendant's pretrial motion to quash arrest. On appeal defendant maintains that the statements of Higgins-Bey and McCastle were not sufficiently reliable to support a finding of probable cause.

■ Sufficient indicia of reliability must support the information which police rely upon to establish probable cause. (*People v. James* (1987), 118 Ill. 2d 214, 222, 514 N.E.2d 998.) "One indicia of reliability of information is found in admissions against the penal interests of the party giving the information." (*James*, 118 Ill. 2d at 223.) Another is in corroboration of the information from other witnesses. (*People v. Denham* (1968), 41 Ill. 2d 1, 5, 241 N.E.2d 415.) Here, three persons made statements against their own penal interests which also implicated defendant, and those statements substantially corroborated each other. The trial court's finding of probable cause was not manifestly erroneous. See *People v. Adams* (1989), 131 Ill. 2d 387, 400, 546 N.E.2d 561.

II

Police permitted Roberto to talk to defendant, who was then 16 years old, at the station. With Officer William O'Donnell present, Roberto said to defendant: "[C]ooperate with these guys; they are going to help you." Defendant later made a statement implicating himself in the burglary. Defendant admitted, in the written statement, that no promises were made to him to induce the confession.

At the hearing on defendant's motion to suppress his statement, O'Donnell admitted that he overheard the conversation and said nothing. He testified that police never told Roberto what to say to defendant. The officers who were present during questioning of defendant testified that police read defendant his rights, defendant never asked for a lawyer, and police never threatened, coerced or mistreated defendant.

Youth Officer James Bach testified that he arrived at the police station at 1:30 a.m. on July 16, 1987, about two hours after defendant arrived at the station. Bach asked the assistant State's Attorney whether he had informed defendant's parents of the arrest and advised defendant of his *Miranda* rights. The assistant State's Attorney answered that he had. Defendant told Bach that he understood his rights. Bach remained with defendant throughout the subsequent questioning, staying after defendant confessed at 4:30 a.m.

Defendant testified that when he came to the police station officers asked him to sign some papers. He refused and asked to speak to his lawyer. Officers told him they would bring his brother down to talk sense to him. His brother told him that if he went along with the story that the police would tell him, they would both be released the next morning. Since Roberto had been in custody the day before, and police had released him, defendant believed him. Police did not tell him his rights before he made his confession.

The trial court denied defendant's motion, finding that "defendant was treated like a gentleman at the police station. There is no *** believable evidence of any physical, psychological or any other type of coercion. There was in fact a reading of the *Miranda* [r]ights."

■ Defendant contends that the trial court should have suppressed his statements to the police as involuntary because police, through defendant's brother, promised to release him and because police failed to take him to a youth officer before questioning.

The court must look to the totality of the circumstances to determine whether a defendant made statements voluntarily. (*In re Lamb* (1975), 61 Ill. 2d 383, 388, 336 N.E.2d 753.) "[C]ourts must be especially cautious in cases involving juveniles because the coerciveness of a situation is thereby enhanced." (*People v. Cole* (1988), 168 Ill. App. 3d 172, 179, 522 N.E.2d 635.) The court may consider such factors as defendant's age, the length of interrogation, defendant's need for sleep, presence of a youth officer and promises made to defendant, but no single one of these factors mandates a finding of involuntariness. (*People v. Pittman* (1973), 55 Ill. 2d 39, 302 N.E.2d 7; *People v. McGhee* (1987), 154 Ill. App. 3d 232, 240, 507 N.E.2d 33; *People v. Wright* (1984), 127 Ill. App. 3d 747, 751, 469 N.E.2d 351.) This court will not overturn the trial court's determination of voluntariness unless that determination is contrary to the manifest weight of the evidence. *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.

Police interrogated defendant, who was then 16 years old, from 11:30 p.m. until 4:30 a.m. The trial judge believed police testimony that they advised defendant of his *Miranda* rights before questioning him and they treated him well. The youth officer did not arrive until 1:30 a.m., when questioning was in progress, but the officer reminded defendant of his rights and remained with him throughout subsequent questioning. The police did not directly make any promises to defendant, and defendant admitted in his transcribed statement that police made no promises to induce the statement. The trial court's finding that defendant confessed voluntarily is not contrary to the manifest

weight of the evidence. See *In re Potts* (1978), 58 Ill. App. 3d 550, 374 N.E.2d 891.

## III

The State charged Fernando Gomez, Henry Rodriguez, McCastle, Higgins-Bey and the Cardonas with murder and residential burglary. Gomez and Higgins-Bey agreed to plead guilty to residential burglary and testify against McCastle, Rodriguez and the Cardonas. The State tried defendant on an indictment in four counts, which charged him as one accountable for (1) intentional killing; (2) stabbing the victim while knowing that the acts created a strong probability of death or great bodily harm; (3) killing in the course of the forcible felony of residential burglary; and (4) residential burglary.

Gomez testified that on June 23, 1987, he met the other five participants in front of the Cardonas' home and they agreed to burglarize a home. They went to Carvis' home, which was nearby, and Rodriguez went in. After a minute he told Gomez, McCastle and Roberto to follow him, while Higgins-Bey and defendant waited outside. When Gomez entered, he saw Carvis standing by the staircase. McCastle, Rodriguez and Roberto began to struggle with Carvis while Gomez went through the house, looking for things to steal.

Gomez testified that defendant came in later and hit Carvis. Rodriguez pulled out a knife and stabbed Carvis once. Gomez and defendant went back to the television room and Rodriguez said, "Get something to tie this motherfucker up." Defendant gave Rodriguez a tie. Gomez then left. Shortly after he left, he saw defendant leave; Roberto carried some things out of the home a few minutes later.

Gomez admitted that he lied in his first statement to the police. In his written, signed statement, he said he saw Higgins-Bey kicking Carvis. He explained that he said this because police told him Higgins-Bey implicated him in the burglary. Gomez also told police that he met the other participants over at Maple and Potomac Streets, which is not near defendant's home, in order to throw them off. On cross-examination, Gomez admitted that he also told police, falsely, that Roberto drove to Carvis' home in a black car and that he had stopped at a McDonald's on the way. He admitted that he lied further when he told police that the six participants rushed into the house together.

Higgins-Bey testified that he and defendant waited in the alley until they heard Rodriguez signal for them. When they got upstairs, he saw McCastle holding Carvis by the neck while Roberto and Rodriguez hit him, then Gomez and defendant hit him and Rodriguez stabbed him. On cross-examination, he admitted that there were sev-

eral inaccuracies and omissions in his initial statement to the police. Defense counsel brought out the omissions, partly by reading from the transcribed statement.

The assistant State's Attorney read into evidence the statement defendant made to the police. Defendant admitted that he went into Carvis' home with Higgins-Bey, and he left when he saw Rodriguez stab Carvis once. The attorney also identified a document as Roberto's statement to the police.

Defendant asked the court to give the jury copies of Higgins-Bey's and Gomez's statements to the police. The State asked the court to give the jury a copy of Roberto's statement as well. The court said the statements of Higgins-Bey and Gomez contained much irrelevant material that was not admissible for any purpose, so it refused to send any statements to the jury.

■ Defendant claims that this ruling is reversible error. In *People v. Lewis* (1977), 51 Ill. App. 3d 109, 366 N.E.2d 446, two witnesses, who may have been involved in a fatal stabbing, made formal transcribed statements to police. When they testified against the defendant, defense counsel cross-examined them on inconsistencies between their testimony at trial and the transcribed statements. The trial court refused defendant's request to send the statements back to the jury room, and the appellate court affirmed, holding:

> "Whether or not the typewritten statements should have been given to the jury was within the discretion of the trial court. [Citations.] The trial court did not abuse its discretion in not allowing the jury to have copies of the pretrial statements." (*Lewis*, 51 Ill. App. 3d at 119-20.)

Specifically, in view of the irrelevant material included in the transcribed statements, we find that the trial court here did not abuse its discretion by refusing to send the statements to the jury. See also *People v. Panzer* (1979), 73 Ill. App. 3d 1, 8-9, 391 N.E.2d 467.

## IV

The medical examiner testified that Carvis died from 15 deep stab wounds and 22 other wounds caused by at least two different knives. Over defendant's objection, the court permitted the medical examiner to present gruesome morgue slides showing the many stab wounds; some also showed the victim's arms tied with a necktie. The court permitted the jury to have photographs of the corpse during deliberations, finding that although there was no issue as to the cause of death, the photographs would help the jury evaluate the credibility of Gomez and Higgins-Bey, since the photographs also showed the inte-

rior of the home, and the photographs showed a far greater number of wounds than that to which either witness testified.

■ Our supreme court announced general principles concerning the admission of gruesome photographs in *People v. Jenko* (1951), 410 Ill. 478, 102 N.E.2d 783. The court rejected the defendant's argument that admission of the photographs constituted prejudicial error, holding:

> "The fact and cause of death, the number and location of the wounds, the manner in which they were inflicted, and the wilfulness of the acts in question are all material to the offense charged. The photographs tended to establish these facts and conditions, and under such circumstances their production as evidence is a legitimate mode of proof ***. A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury. *** [Q]uestions relating to the character of the evidence offered, and the manner and extent of its presentation, are largely within the discretion of the trial judge ***." *Jenko*, 410 Ill. at 482.

The slides here corroborated and explained the medical examiner's testimony (see *People v. Hicks* (1981), 101 Ill. App. 3d 238, 427 N.E.2d 1328), and the photographs are somewhat probative of the credibility of Higgins-Bey and Gomez (see *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279). The trial judge did not abuse his discretion by permitting the pathologist to show the morgue slides or by permitting the jury to have the gory photographs with them during deliberations.

## V

The court, using the State's proposed instruction, told the jury that to prove defendant guilty of murder, the State needed to prove that someone for whose acts defendant was responsible caused the death, and that when he did so

> "he intended to kill or do great bodily harm to Raymond Carv[i]s; or he knew that his acts would cause death or great bodily harm [to] Raymond Carv[i]s; or he knew that his acts created a strong probability of death or great bodily harm to Raymond Carv[i]s; or he was committing the offense of residential burglary."

During deliberations, the jury sent the judge a note asking: "If we find the defendant guilty of *** residential burglary, do we automati-

cally find him guilty of murder?" Following discussion of other proposed answers, the court wrote: "Please read the instructions carefully, they should answer your questions." The jury returned one verdict finding defendant guilty of residential burglary and one verdict finding defendant guilty of murder.

Defendant argues that the trial court could not enter judgment against him for both felony murder and residential burglary since the burglary was a lesser-included offense of the felony murder. (See *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838.) The State does not contend that the two convictions and sentences can stand together, although some Illinois cases support such an argument. (Compare *People v. Davis* (1988), 173 Ill. App. 3d 300, 313-14, 527 N.E.2d 552; *People v. Johnson* (1988), 167 Ill. App. 3d 659, 669-70, 521 N.E.2d 609.) Instead, the State asks this court to vacate the felony murder conviction and the conviction for causing death while performing acts which defendant knows will probably cause great bodily harm, affirm the conviction for intentional murder, and impose sentence on that count.

When a jury returns a general verdict, that verdict supports a conviction on any count for which "the jury's intention can be ascertained with reasonable certainty." (*People v. Tannahill* (1976), 38 Ill. App. 3d 767, 773-74, 348 N.E.2d 847.) When the trier of fact finds a defendant guilty on several murder charges for a single murder, the trial court should enter judgment only on the most serious murder charge which the trier of fact found that the State proved beyond a reasonable doubt. (*People v. Mack* (1984), 105 Ill. 2d 103, 136-37, 473 N.E.2d 880, *vacated on other grounds* (1987), 479 U.S. 1074, 94 L. Ed. 2d 127, 107 S. Ct. 1266.) Our supreme court has decided that intentional killing is more serious than killing while knowing one's acts create a strong probability of death or killing in the course of a felony because intentional killing involves the most culpable mental state. *Mack*, 105 Ill. 2d at 137.

In this case, as in *People v. Plummer* (1986), 151 Ill. App. 3d 94, 502 N.E.2d 1120, the trial court entered judgment on all three counts of murder, although only one person died, and the trial court imposed sentence on only the felony murder count. In *Plummer*, this court affirmed the conviction for intentional murder, because that was the most serious charge on which defendant was convicted, vacated the other murder convictions and remanded for sentencing since the trial court had not imposed sentence on the intentional murder charge. *Plummer* differs from this case in one significant respect: *Plummer* involved a bench trial and defendant here had a jury trial. Therefore,

in *Plummer*, as in *Mack*, the trier of fact expressly considered each murder count separately and decided that defendant was guilty of intentional murder, beyond a reasonable doubt.

Our supreme court indicated proper application of *Mack* in *People v. Guest* (1986), 115 Ill. 2d 72, 103-04, 503 N.E.2d 255:

> "Defendant was charged *** with intentional murder (count 1), knowing murder (count 2), and felony murder (count 3). The record reveals that the trial court found him guilty on all three counts. The court, having heard the witnesses and having weighed the evidence, found that the State had proved each charge beyond a reasonable doubt. However, despite there being evidence to support each charge, it must be remembered that only one person was murdered. In such circumstances, this court has held that only the conviction for the most serious murder offense charged will be upheld, with convictions on the less serious murder charges vacated. [Citations.] Where, as here, charges of intentional, knowing, and felony murder have been proved, intentional murder is deemed the most serious offense. [Citation.] It is clear, therefore, that defendant's convictions for knowing murder and felony murder should be vacated."

In *Guest, Mack* and *Plummer*, as well as in the other cases the State cites, *People v. Pitsonbarger* (1990), 142 Ill. 2d 353, 568 N.E.2d 783, and *People v. Matthews* (1990), 205 Ill. App. 3d 371, 562 N.E.2d 1113, the trial courts in bench trials determined the defendants' guilt and entered verdicts expressly finding defendants guilty of both intentional murder and felony murder. Juries in *Pitsonbarger* and *Mack* heard only the sentencing phases of those trials.

■ In this case, on the other hand, the jury determined defendant's guilt. The jury did not make specific findings on each count of the indictment, and the jury's general verdict does not indicate that it made findings pertinent to all of the State's theories. The court never asked the jury to consider the question of whether defendant was guilty specifically of intentional murder. The court instructed the jury to return a verdict of guilty of murder even if it found only felony murder. The "distinctive characteristic of felony murder is that it does not involve an intention to kill." *People v. Viser* (1975), 62 Ill. 2d 568, 581, 343 N.E.2d 903.

The jury returned a general verdict of guilty of murder. The court can be reasonably certain that the jury found defendant guilty of a count of murder at least as serious as felony murder, since it found defendant guilty both of murder and the felony which formed the

predicate offense for the felony murder charge. The court cannot be reasonably certain that the jury intended to convict defendant for intentional murder. The trier of fact here, unlike the trier of fact in the cases which the State cites, never found intentional murder beyond a reasonable doubt. *Cf. Guest*, 115 Ill. 2d at 103.

When a jury convicted a defendant of murder on instructions which permitted the jury to convict either on a theory of accountability or for guilt as the principal, the appellate court vacated judgment entered by the court for guilt as a principal, affirming the conviction for guilt as an accessory. (*People v. Bivens* (1987), 163 Ill. App. 3d 472, 494, 516 N.E.2d 738.) The court held:

"From a review of the record before us it cannot be discerned whether the jury by its guilty murder verdict found the defendant, Aryules Bivens, guilty as principal, *i.e.*, that he was the person who actually killed the deceased, Kelvin Coleman, or whether the jury found Bivens guilty under accountability for his aiding, abetting and agreeing to the commission of Coleman's murder by Johnny Nicks. Having chosen to take two bites from the apple to prove Bivens' guilt as principal and as an accountable accomplice, the prosecutor was bound by that choice at sentencing. He was not also entitled to another two bites from sentencing. Because the prosecutor presented evidence of Bivens' guilt as principal as well as evidence of Bivens' accountability, because the prosecutor argued to the jury to find Bivens guilty on either or both theories and because the jury was so instructed, the guilty verdict fails to specify and it cannot be determined whether the jury found Bivens guilty as the actual shooter or as one who was accountable for the shooting of Coleman, the defendant's life imprisonment sentence is invalid and it is therefore vacated." *Bivens*, 163 Ill. App. 3d at 494.

The prosecutor here invited the jury to enter a verdict of guilty of murder without finding intent to murder, based on the felony murder doctrine, if the jury found that the killing occurred in the course of a residential burglary. The trial court in *Bivens* could infer that all of the jurors found defendant guilty of murder at least as an accessory; the trial court here could properly infer from the jury's verdict that all of the jurors found defendant guilty, beyond a reasonable doubt, of murder at least as serious as felony murder, but the court could not infer that the jury found him guilty of the more serious charge of intentional murder. Therefore, we affirm the conviction for felony murder and vacate the other murder convictions.

Illinois appellate courts have reached conclusions contrary to ours in similar circumstances in at least two cases. In *People v. Travis* (1988), 170 Ill. App. 3d 873, 525 N.E.2d 1137, the trial court instructed the jury to find defendant guilty of murder if it found intent to kill, knowledge that his acts would kill or cause great bodily harm, knowledge that his acts created a strong probability of death or great bodily harm, or if it found that when he caused death he was committing a residential burglary. The jury returned a general verdict of guilty of murder and guilty of residential burglary, and the defendant argued on appeal that the murder conviction should be construed as a felony murder conviction. After discussing the various theories that the jurors could have believed, and agreeing that the jury's verdict did not show that it accepted any one of these theories, the court held that:

> "the general verdict of guilty of murder would support convictions on all four theories. \*\*\* Accordingly, our present case should be considered to consist of a conviction for intentional murder \*\*\*." (*Travis*, 170 Ill. App. 3d at 893.)

Because the court vacated the conviction for felony murder, it found that the residential burglary conviction and the intentional murder conviction could both stand without violating *King*. Thus, although the appellate court expressly recognized that the finder of fact may not have found an intent to kill, it affirmed a conviction and sentence for intentional murder, a sentence which it recognized as one that could not have been imposed for felony murder.

In *People v. Baker* (1984), 127 Ill. App. 3d 565, 469 N.E.2d 602, a jury returned a general verdict of guilty of murder and home invasion, and the trial court imposed consecutive sentences for the offenses. Defendant argued that his murder conviction should be construed as a felony murder conviction, for which the home invasion was a lesser-included offense. The court held that "with three possible bases for the general guilty of murder verdict, it is impossible to state that the verdict was based on the felony murder count alone." (*Baker*, 127 Ill. App. 3d at 569.) On this basis, the court held that the conviction counts as a conviction for intentional murder, and since home invasion is not an included offense for intentional murder, the court affirmed the convictions and consecutive sentences. Thus, the court in *Baker*, like the court in *Travis*, affirmed a conviction for intentional murder although it found that the trier of fact may not have believed that defendant, or one for whom he was accountable, had the intent necessary for intentional murder.

The courts ostensibly based their holdings on a principle announced in *People v. Lymore* (1962), 25 Ill. 2d 305, 185 N.E.2d 158. In that case, the jury returned a general verdict of guilty on a complaint charging defendant with two counts of burglary and one count of receiving stolen property. The defendant argued that the general verdict was internally inconsistent because finding him guilty of receiving stolen property was inconsistent with finding him guilty of burglary. Our supreme court rejected the argument, holding: "A general finding of guilty is presumed to be based on any good count in the indictment to which the proof is applicable." (*Lymore*, 25 Ill. 2d at 307-08.) Since the proof presented applied principally to the burglary charge, the court affirmed the verdict on that charge. The case stands for the proposition that the court should not construe a general verdict on several counts as internally inconsistent if the verdict on any charge is valid. The case does not support the principle that when a jury returns a general verdict of guilty, following instructions to enter the general verdict if it found the defendant guilty on any one of several counts, the court should construe the verdict as a finding on the most serious offense listed as one of the alternatives supporting the general verdict. Nonetheless, that is the principle applied in *Baker* and *Travis*.

In *Travis* and *Baker* the court imposed a greater sentence appropriate for intentional murder on a defendant found guilty of murder in a general verdict which the jury was instructed to enter if it found either intentional or felony murder. Where the State proved the proposition in the disjunctive, it cannot claim to have proved the conjunctive. Each juror found either intentional or knowing or felony murder; the jurors did not state that they found all three. Because those cases conflict with the fundamental principle that the court cannot impose sentence on a defendant for an offense unless the trier of fact has found the defendant guilty of that offense, we decline to follow *Travis* and *Baker*. The verdict here, as in *Baker* and *Travis*, does not state that it is a finding of guilt as charged in the indictment, nor does it in any other way indicate that it is a finding on each count. (Compare *People v. Green* (1963), 27 Ill. 2d 39, 187 N.E.2d 708.) The verdict is, therefore, not sufficient for the trial court to ascertain with reasonable certainty that the jury found defendant guilty of intentional murder. (See *People v. Schrader* (1954), 2 Ill. 2d 212, 117 N.E.2d 786.) Accordingly, we vacate the convictions for intentional murder and knowing murder. Since the jury found defendant guilty of murder and the felony which formed the basis for the felony murder charge, we

infer that it found him guilty of at least felony murder. We affirm the conviction for felony murder.

■■ Thus, we must confront the question which the State sought to avoid, and which the courts in *Baker* and *Travis* expressly avoided. Defendant contends that the court cannot sentence him for both felony murder and the predicate felony of residential burglary. The State has offered no argument in opposition.

The appellate courts of this State are in direct conflict on the issue. The first district has repeatedly held, in adherence to *People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9, that the underlying felony for felony murder is not a lesser included offense of the felony murder, and therefore separate convictions and sentences for felony murder and the predicate felony may stand. (*E.g.*, *People v. Montes* (1989), 192 Ill. App. 3d 874, 884-85, 549 N.E.2d 700; *Davis*, 173 Ill. App. 3d at 313-14.) The fifth district has adopted the same rule. (*People v. Thomas* (1991), 217 Ill. App. 3d 698, 706-07, 577 N.E.2d 831.) The third district, interpreting the statutory definition of "included offense" without reference to *Green*, has found that "[i]n the case of felony murder, the predicate felony is always a lesser included offense." (*People v. Johnson* (1991), 223 Ill. App. 3d 169, 170, 584 N.E.2d 515; see *People v. Jordan* (1983), 116 Ill. App. 3d 269, 275, 452 N.E.2d 93.) The fourth district apparently applies the same rule. (*Johnson*, 167 Ill. App. 3d at 669-70.) Our supreme court has denied leave to appeal or petition for *certiorari* for cases on both sides of the issue. See *Johnson*, 167 Ill. App. 3d 659, *appeal denied* (1988), 122 Ill. 2d 586, 530 N.E.2d 256; *Montes*, 192 Ill. App. 3d 874, *appeal denied* (1990), 132 Ill. 2d 551, 555 N.E.2d 383.

Section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 2—9) defines "[i]ncluded offense" as

"an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein."

The Appellate Court, Third District, reasoned:

"In the case of felony murder the underlying felony is a lesser included offense because the felony, which in the case at bar was burglary, is established by proof of the same or less than all of the facts required to establish the offense of murder in the course of a burglary. This form of a lesser included of-

fense has been further defined judicially as ' " 'one composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense [citation] so that it is impossible to commit the greater offense without necessarily committing the lesser offense.' " ' *People v. Devine* (1981), 98 Ill. App. 3d 914, 924[, 424 N.E.2d 823]." *Jordan,* 116 Ill. App. 3d at 275.

Our supreme court in *Green* did not address this argument, as it did not consider the statutory definition of included offense. The court, relying on *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819, held that an attempted robbery and a felony murder predicated on that attempted robbery did not arise out of the same transaction. *Williams* involved findings of guilt on all counts of an indictment charging defendant with murder, felony murder and armed robbery. The court found that although the murder was closely related to the robbery,

" 'the crimes are clearly distinct and require different elements of proof.' [(*People v. Johnson* (1970), 44 Ill. 2d 463, 475, 256 N.E.2d 343; citations.)] The convictions and sentences imposed upon the defendant for murder and armed robbery may both stand." *Williams,* 60 Ill. 2d at 14-15.

The court in *Green* did not identify an element of the attempted robbery not required for proof of felony murder, nor did the court explain how the prosecution could prove felony murder without proving attempted robbery. To establish felony murder, the prosecution needed to prove that defendant killed the victim without lawful justification, and "in performing the acts which cause[d] the death *** [defendant was] attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1971, ch. 38, par. 9—1 (a)(3).) Since the State based the felony murder charge on the felony of attempted robbery, the State needed to show all the elements of attempted robbery to obtain the felony murder conviction.

Our supreme court has more recently discussed included offenses in *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477. There the court adopted, as a rule of statutory construction, the test established in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

Applying that rule to the facts before it, the court said:

"The underlying felony charge here, aggravated battery causing great bodily harm, does not require proof of a fact in addition to those required to prove the offense of armed violence based on the underlying felony of aggravated battery causing great bodily harm. One cannot violate the armed violence statute without first committing a felony. The alleging of that felony in the armed violence charge has the effect, upon conviction, of making it a necessarily included offense." (*Donaldson*, 91 Ill. 2d at 170.)

The court vacated the aggravated battery conviction.

The reasoning of *Donaldson* is fully applicable to, and entirely contradictory to, *Green*. We find no language in the felony murder statute, and the court in *Green* cites none, demonstrating legislative intent to "provide[ ] for separate convictions and sentences on charges of [felony murder] and its predicate or underlying felony." (*Donaldson*, 91 Ill. 2d at 168.) We conclude that in *Donaldson* our supreme court implicitly overruled *Green*. If we are wrong about the import of *Donaldson*, we fervently hope that our supreme court will explain the error and resolve the conflict between the districts on this issue.

We anticipate one argument the State might have made for affirming the separate convictions here under the *Donaldson* rule. To prove felony murder, the prosecutor could have shown that defendant was attempting burglary when he caused the victim's death. The State needed to prove additional facts establishing successful completion of the burglary to obtain a conviction for that offense. We raise the argument on our own, and we find it unconvincing.

A defendant is guilty of felony murder if he causes death without justification while "attempting or committing a forcible felony." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(3).) If the State predicates a felony murder charge on attempting a forcible felony like residential burglary, the State must prove all the elements of the felony of attempted residential burglary. The offense of attempted burglary, as an included offense of the felony murder, could not stand together with the felony murder conviction. Where, as here, the State predicates the felony murder charge on committing a burglary, the State must prove the commission of the felony to sustain the felony murder conviction. The State must prove, as a predicate offense, either a forcible felony or an attempted forcible felony to show felony murder; in either case, the predicate offense is included.

Thus, if a defendant in the course of a rape and kidnapping kills the victim, he may be found guilty of felony murder predicated on either the rape or the kidnapping. If the State elects to prove felony murder based on kidnapping, it may be able to obtain a separate conviction for rape insofar as proof of rape would require proof of facts in addition to the killing in the course of kidnapping. Of course, the State would still need to show that the rape involved separate acts from the murder. The State could not, however, obtain separate convictions for that felony murder and the kidnapping. Since the prosecution here based the felony murder charge on residential burglary, the conviction for residential burglary must be vacated.

## VI

Finally, defendant maintains that the trial court did not give adequate consideration to his rehabilitative potential when it imposed an excessive sentence of a total of 55 years' imprisonment. According to the presentence investigation, defendant had no significant prior record. When he was 12 years old, his father committed suicide at home. Defendant ran away from home shortly thereafter, when his mother permitted her new boyfriend to move into the home. Defendant joined the Spanish Cobras and began selling drugs. He returned home after his mother's boyfriend died. The report does not indicate for how long defendant continued selling drugs, but defendant's record shows no arrests or convictions for possession or sale of narcotics.

Emphasizing defendant's drug sales and the pain suffered by Carvis and his family, the court sentenced defendant to 40 years' imprisonment for felony murder and 15 years' imprisonment for residential burglary, the sentences to run consecutively. The court entered judgments, but no sentences, on the counts charging defendant with intentional murder and killing while knowing that his acts created a strong probability of great bodily harm. We have already vacated those judgments. Since we vacate the conviction for residential burglary, we also vacate that 15-year sentence.

Trial courts have broad discretion for determining sentences, and we will not disturb a sentence unless the trial court has abused that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) As our supreme court stated in *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541:

"The trial judge was charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. *** We have consistently held that it is not our function to

serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the task of sentencing had been ours."

Here, the trial court considered the pretrial investigation and weighed the relevant factors to arrive at a sentence of 40 years' imprisonment for the felony murder, and that sentence is well within statutory parameters. We find no abuse of discretion.

We find no reversible error in the trial court's evidentiary rulings. Because the verdict shows that the jury found defendant guilty of at least felony murder, we affirm the conviction and sentence for felony murder. We vacate the convictions for intentional murder and knowing murder since the jury's verdict is not sufficient to support an inference that the jury found defendant guilty of charges so serious. We vacate the conviction for residential burglary as a lesser included offense of felony murder.

Affirmed in part; vacated in part.

HARTMAN, P.J., and SCARIANO, J., concur.